OF THE

# STATE OF ARKANSAS,

AT THE

# NOVEMBER TERM, 1881.

(CONTINUED FROM VOL. 37.)

---

JONES, McDOWELL & CO. ET AL. V. ARK. MECH. AND AGL. CO.

1. INCORPORATION: *Assets, a trust fund for payment of its debts. Innocent purchaser. Director is not.*
    The assets of an incorporated company are a trust fund for the payment of its debts, and may be followed into the hands of any person acquiring them with notice of the trust. A director of the company is conclusively presumed to know its pecuniary condition, and his purchase of the assets will not be *bona fide*, and without notice of the trust.

2. TRUSTEE: *Purchase by, voidable.*
    The purchase of the assets of an incorporated company by a director of the company, is not void, but only voidable at the instance of a party in interest.

3. LIENS, JUNIOR: *How affected by Chancery sale to enforce senior.*
    A sale of property under a Chancery decree to enforce a paramount lien, extinguishes a junior lien, or transfers it to the proceeds of the sale; and the junior lienor can avail himself of it, only by becoming a party to the Chancery suit and intervening for the surplus.

2–38

4. LIEN: *Acquired by filing bill, etc.*

   A judgment creditor who first files his bill and serves summons upon his debtor, thereby obtains a lien on the assets which he seeks to reach, and will have preference over other creditors in their distribution.

APPEAL from *Pulaski* Chancery Court.

Hon. J. R. EAKIN, Chancellor.

*U. M. Rose,* for Jones, McDowell & Co. :

"While the law permits an insolvent debtor to make choice of the persons he will pay, it denies him the right in doing it to contrive that other creditors shall never be paid, or to use the debt of the preferred creditor as a colorable consideration to screen and protect his property from their claims, or to delay, hinder and embarrass them in the enforcement of their demands." *Bump. Fraud. Conv.*, 189; *Cook* v. *Cook*, 43 *Md.*, 522; *Young* v. *Hermans*, 66 *N. Y.*, 374. Any secret trust in favor of the Association or its stockholders would annul the conveyance. *Catlin* v. *Cumir*, 1 *Sawyer*, 7; *Clark* v. *Robbins*, 8 *Kansas*, 574; *Beutez* v. *Rockey*, 69 *Penn.*, 71; *Aird* v. *Sukins*, 6 *Wall.*, 78; *Sparks* v. *Mack*, 31 *Ark.*, 667.

The capital stock and assets of a corporation are held by it as a trust, for payment of creditors, and cannot be dissipated by going through the process of re-incorporation, etc. *San. F. R. R. Co.* v. *Bee*, 48 *Cal.*, 398; *Sanyer* v. *Hoag*, 17 *Wall.*, 620. Creditors have a lien upon it in equity, and can follow it, if diverted, except as against *bona fide* holders for valuable consideration. *Sanger* v. *Upton*, 91 *U. S.*, 60; *Upton* v. *Tribilcock*, 97 *U. S.*, 47; *Marr* v. *Bk. West Tenn.*, 4 *Cold.*, 479; *State* v. *Bank*, 7

*Tenn.*, 112; *Hoffman S. C. Co.*, v. *Cumberland C. Co.*, 16 *Md.*, 456.

A purchase by a director, of corporate property is void, and property belongs to corporation. 16 *Md.*, 456; *Perry on Trusts*, sec. 207, and cases cited. *Imboden* v. *Hunter*, 23 *Ark.*, 626; *West* v. *Waddle*, 33 *Id.*, 575. "The intervention and abuse of the process of the court cannot change the aspect of the case." *Stephens* v. *Bardett*, 7 *Dana*, 259.

The decree of Wait being paid off by money raised by defendants, removed the incumbrance created by his decree, and left appellants' title free from any adverse claim, and their title should have been quieted. 12 *Ark.*, 219; 14 *Id.*; 69; 19 *Ib.*, 62.

The State Fair Association being a mere volunteer, can have no claim on the property as against appellants; *Bump. Fraud. Conv.*, 263; whether its motives were good or bad. *Ib.*, 266.

*B. C. Brown*, for appellees:

Appellants charge fraud, and the *onus* is on them. This is an attempt by Jones to get advantage of his co-creditors. Community of interest involves mutual obligations. *Jackson* v. *Ludding*, 21 *Wall.*, 616.

The legal proposition stated in italics in appellants' brief is incorrect. *Twin Lick Oil Co.* v. *Marbury*, 1 *Otto.*, 587, 593. See also, *Murray* v. *Vanderbilt*, 39 *Barb.*, 140; *Ashhurst's Appeal*, 60 *Penn. St.*, 290; *Buell* v. *Buckingham*, 16 *Iowa*, 284.

*M. W. Benjamin*, for appellee:

If mortgagee sells upon a prior mortgage, and there is a

surplus, a junior incumbrancer can bring suit for funds in his hands, if in proper time. *Jones on Mortgages, sec.* 1940 ; *Wiggins* v. *Heywood,* 118 *Mass.,* 514.   But if such fund is paid into court, such payment is a good defense to suit for the surplus. *Ib.* Mortgagee must have actual notice, lien of record not sufficient. *Jones on Mortgages,* 1930 ; *McLean* v. *Lafayette Bank,* 4 *McLean,* 430 ; *Nelson's Heirs* v. *Boyce,* 6 *J. J. Marshall,* 401.   Same rule in vendor's sales. Appellants should have intervened, prior to the sale, for the surplus ; not doing so, they have no right to the fund. *Snyder* v. *Stafford,* 11 *Paige,* 11.

The time for redemption had not expired when the land was sold under Wait's decree, and when said sale was made appellants lost all right to the land, but had a specific lien upon the surplus, which they lost by failing to take proper steps in time.   *Snyder* v. *Stafford, supra; Jones on Mortgage, sec.* 1940.

Before Hon. W. M. HARRISON, Judge, and W. W. SMITH and GEO. W. CARUTH ; Special Judges, Hon. E. H. ENGLISH and J. R. EAKIN, being disqualified.

### STATEMENT.

W. W. SMITH, S. J.   The Arkansas Agricultural and Mechanical Association, a corporation organized under the laws of this State, had purchased of William B. Wait, a tract of land near Little Rock, afterwards known as the Fair Grounds, and a balance of purchase money remaining unpaid, Wait had obtained a decree therefor, with the usual order of foreclosure and sale.   Hunter, clerk and master of the Pulaski Chancery Court, was charged with the execution of the decree, with directions, in the event of sale, to apply the proceeds to the payment of the debt, interest and

costs of suit, and the surplus, if any, to the corporation defendant. The land was sold July 25th, 1874, to George R. Weeks, for $4000, payable in three months. On the twenty-ninth of the same month, this sale was reported to and approved by the court. On the second of November, 1874, Hunter made a further report, stating that Weeks had paid his bid, that a deed had been made to him, and a surplus of $2590.63 had been turned over to the association. Weeks conveyed the land, February 19th, 1875, for an expressed consideration of $4000.00, to the State Fair Association, a new corporation, which appears to have been formed out of the wreck of the Agricultural and Mechanical Association, now defunct.

Meantime, Jones, McDowell & Co. had on the thirtieth of March, 1874, recovered judgment against the old association, before a justice of the peace. An execution having been returned " nulla bona," a transcript of the judgment was filed, April 13th, 1874, in the office of the clerk of the Circuit Court. An execution was issued out of the last named court, which was levied June 24th, 1874, upon the land bought of Wait, and at the sheriff's sale, July 18th, 1874, Jones, McDowell & Co. purchased it, bidding therefor the amount of their debt.

Miles Q. Townsend had also recovered against the old association, before a justice of the peace, six several judgments, but later than the judgment of Jones, McDowell & Co. He pursued for the enforcement of his judgments, a course similar to that detailed above ; and on the same day, last mentioned, bought the land at a sale under execution, issued out of the Circuit Court, bidding the amount of his several debts, which, with the interest and costs, aggregated about $1000.

Neither of these purchasers redeemed the premises by paying off Wait's decree before the master's sale, nor did they

intervene for the surplus produced by that sale. But, on the twenty-sixth of March, 1875, the Chancellor opened so much of the master's report as related to the disposition of this surplus. Thereupon, Jones, McDowell & Co. filed the present bill against the two associations, Hunter, Weeks, Logan H. Roots, and Townsend.

The bill, after reciting most of the foregoing facts, charges that Weeks, who was a director in the old company, paid off the Wait decree with money raised by an assessment upon the stockholders of that corporation, and the remainder of his bid in claims against said corporation, which he had bought up or controlled; that the stockholders had abandoned the old company, and had organized a new one under the name of the Arkansas State Fair Association; that the purposes and stockholders of the two companies were the same, and that the last was in fact launched by a call upon the unpaid stock of the old company; that the sole object of the scheme of re-incorporation was to avoid the payment of the old company's debts, particularly the debt due plaintiffs; that Weeks was a nominal purchaser, and the State Fair Association a mere volunteer. And it was prayed that the lands might be subjected to the plaintiffs' debt.

The original bill was framed with a view to remove a fraudulent obstruction to the assertion of the plaintiffs' legal remedy, and to reach social assets, which had been improperly withdrawn before the creditors of the association had been satisfied. Afterwards, the period of redemption from the execution sale having expired, the plaintiffs procured a conveyance of the land from the sheriff, and amended their bill, proposing to pay into court the amount of the Wait decree, with interest, and praying to be allowed to redeem from the master's sale. And the counsel for Jones,

McDowell & Co. claims, in his brief, that they are now the owners of the land.

The appellees filed a joint answer, alleging, among other things, that Weeks bought in good faith for his own account, and that he paid his bid as follows :

| | |
|---|---:|
| Cash on the Wait decree...................... | $1409.37 |
| Debts due by the old company for premiums..... | 300.00 |
| Debt due to W. D. Blocher................... | 50.00 |
| Debts evidenced by two certificates............ | 73.00 |
| Judgment in favor of Little Rock Printing and Publishing Company...................... | 490.26 |
| Note due J. C. Kinesey...................... | 1731.72 |

The answer denied the identity of the two associations or that they had any connection with each other, or that they were composed of the same stockholders ; although it was admitted that some persons held shares in both. And it averred that the $4000, mentioned as the consideration in the deed of Weeks to the State Fair Association, was paid by the issue of full paid stock in the last named corporation.

Townsend made his answer a cross-bill, praying that the land might be charged with the payment of his debt, after Jones, McDowell & Co. were satisfied and offered to redeem from the Wait decree.

The Chancellor was unable to see any fraud in the transaction, and refused any practical relief to the appellants.

The evidence satisfies us of the truth of the principal charges in the bill. The new company was not, however, started by an assessment upon the unpaid stock of the old company. That capital stock, $20,000, had been already fully paid in, and had been exhausted in promoting the objects of the Association, leaving nothing except the land. The old company having fallen into great embarrassment, its stockholders held a meeting, September 16th, 1874,

when it was resolved to assess each stockholder $8 per share, for the purpose of repurchasing the land then recently sold under the Wait decree; and stockholders were assured that the money so raised should be faithfully applied to this purpose, and that the property would then belong to those of them who responded to this appeal. A printed circular was addressed to the stockholders, stating the total indebtedness of the concern, including Wait's debt, at $6,252.44, and the value of the land which had recently been sold under the decree. at $15,000. It was represented that an assessment of $8 on the share, if responded to by all, would discharge all of this indebtedness; that Weeks, one of the signers of the circular, had bought the property, but would allow such of the stockholders as paid their *pro rata*, to redeem, and hold the grounds for the purposes designated by the original founders. And stockholders were warned that if any of their number neglected to heed the call, the delinquent would have no part or lot in the premises, as the contemplated redemption would redound to the benefit of those only who should contribute.

The payment of this assessment was, of course, voluntary. The purpose was to raise a fund for the payment of the corporate debts, and to freeze out such of the shareholders as were unwilling to put any more money into the enterprise. Some honored the call, but not all. Those who complied with the invitation were awarded stock in the new association  Dudley E. Jones, the managing partner of Jones, McDowell & Co., held fifteen shares in the old association, and had once been its president, but had resigned. Townsend had four shares. These parties declined to take stock in the new association in satisfation of their debts, and their refusal seems to have incensed the promoters of the new scheme, who then determined to defeat the collection of those debts if possible. So far as the record dis-

closes, no one held stock in the new company who had not been a stockholder in the old one.

The assets of an incorporated company are a trust fund for the payment of its debts, which may be followed into the hands of any person having notice of the trust. This doctrine was invented by Judge STORY, in the case of *Wood* v. *Drummer*, 3 *Mason*, 308, and it will constitute not the least enduring of his titles to be considered a great jurist. It has been applied by the Supreme Court of the United States in the following cases: *Mumma* v. *Potomac Co.*, 8 *Pet.*, 281; *Curran* v. *Arkansas*, 15 *How.*, 308; *Ogilvie* v. *Knox Ins. Co.*, 22 *Id.*, 387; *Drury* v. *Cross*, 7 *Wall.*, 299; *Railroad Co.* v. *Howard*, 7 *Id.*, 392; *New Albany* v. *Burke*, 11 *Id.*, 96; *Burke* v. *Smith*, 16 *Id.*, 390; *Sawyer* v. *Hoag*, 17 *Id.*, 610; *Sanger* v. *Upton*, 91 *U. S.*, 60; *Upton* v. *Tribilcock*, *Ib.*, 47; *Hatch* v. *Dana*, 101 *U. S.*, 205; *County of Morgan* v. *Allen*, 103 *U. S.*, 498.

The cases in the State courts on this subject are too numerous to cite; but it is sufficient to say that the doctrine has never been denied by any court of last resort in the Union, before which the question has come, and it is as well settled as any legal principle can be.

The rule in England is different. The winding up act of 1848, and the companies act of 1862, as expounded in *Re Phillips*, 18 *Beavan*, 629, and *Spackman* v. *Evans*, *L. R.*, 3 *H. L.*, 171, seem to have been intended rather to secure equality among shareholders than to protect creditors.

Now, it is quite plain that Weeks was not a *bona fide* purchaser, without notice of the trust. As a director, he is conclusively presumed to know the pecuniary condition of his company. Moreover, his deposition shows that he had actual knowledge that it was on the verge of insolvency. And we cannot doubt, from the testimony, that he had purchased in pursuance of a scheme to preserve to the

*1. CORPORATION.* Assets a trust fund to pay debts.

Innocent purchaser. Director is not.

3–38

members of the corporation its property, and at the same time to get rid of its debts, in the event that a sufficient sum of money was not raised by the assessment to pay all creditors.

**2. TRUSTEE: Purchase by, only voidable.** Indeed there is some doubt whether being a trustee for stockholders and creditors, he could buy at all. It is laid down in some of the text books, and in some adjudged cases, that such a purchase is absolutely void without regard to the good faith of the transaction, and that the property belongs to the corporation, the same as it did before such sale. The better opinion, however, is, that it is only to be avoided at the instance of some party in interest. *Twin Lick Oil Co.* v. *Marbury*, 91 *U. S.*, 587. And such we understand to be the rule indicated by this court in an analogous class of cases. *Imboden* v. *Hunter*, 23 *Ark.*, 622 ; *West* v. *Waddell*, 33 *Id.*, 575.

There is evidence enough in this record to set aside the sale to Weeks, and his subsequent conveyance to the State Fair Association, as an attempt to place the assets of the Agricultural and Mechanical Association beyond the reach of creditors by going through the process of re-incorporation, taking on a new corporate name, transferring the assets of the old corporation to the new one, and issuing stock in the new corporation to holders of stock in the old one. And we should not hesitate to apply the axe to the root, if the ends of justice required it. But we have no disposition to upset things further than is necessary to work out the equities of the parties before the court. The State Fair Association may keep the property, on condition that it pays the debts of its predecessor. Being a volunteer, it is immaterial whether it had notice of the trust or not. *Perry on Trusts*, secs. 217, 828.

We regard the whole transaction as a scheme to distribute the assets of the corporation among its stockholders, or

Jones, McDowell & Co. et al. v. Arkansas Mechanical and Agricultural Co.

such of them as were willing to embark a further advance of money in it, leaving creditors unprovided for. This was not only against conscience, but it was against the spirit if not the letter of our statute. *Gantt's Digest, sec.* 3354.

We therefore declare that Weeks and the State Fair Associotion took the property charged with a trust in favor of creditors, which a court of equity will enforce by laying hold of the property and compelling its application to the satisfaction of these demands.

But Jones, McDowell & Co. are not the owners of this land. We attach no special significance to their judgment, except as a judicial ascertainment of the amount of their debt, and as placing them in a position to assail the subsequent transfers. The filing of a transcript of their judgment in the office of the clerk of the Circuit Court, with a view to obtain a lien upon the real estate of the corporation, was futile. As the justice of the peace rendered judgment on the thirtieth of March, 1874, and the transcript was filed April 13th, 1874, it is obvious that the constable must have returned the execution, "no property found," before its return day. The fact that a defendant has no property subject to a writ, when it comes to the officer's hands, gives no assurance that he will continue to have none until the return day. And inasmuch as, in such cases, the return is the basis of further proceedings, which further proceedings depend for their validity on a previous valid return, it is doubtful whether Jones, McDowell & Co. acquired any lien by filing the transcript and docketing their judgment in the Circuit Court. *Freeman on Executions, secs.* 14, 353.

But if they did secure such a lien, it was swept away by the master's sale, under a decree enforcing a paramount lien. After that their lien was either extinguished or it was transferred to the proceeds of the sale. *Markey* v. *Langley,* 92 *U. S.,* 155, and cases there cited. And to get any benefit

3. JUNIOR LIEN: Effect on, of Chancery sale to enforce senior.

from it, they were bound to make themselves parties to the Wait suit, and intervene for the surplus produced by the sale. *Jones on Mortgages*, secs. 1684, 1687; *Clark* v. *Carnall*, 18 *Ark.*, 209.

It follows that the purchases of the land by Jones, McDowell & Co., and by Townsend, under their respective executions, were nugatory, and the satisfaction of their judgments thereby was apparent and not real. The equitable principles of the Statute of 22 *Henry VIII, ch.* 5, which gave a remedy to the creditor to whom the debtor's land had been delivered under an elegit, when the tenant was thereafter evicted, without fault on his part, are probably a part of the common law of this State, as they have been decided to be of New York; and remain in force, notwithstanding that writ has no place in our system, and are so far applicable to sales under execution as to entitle plaintiffs to equitable relief on the failure of title to property purchased by them, under execution against defendant. *Bank of Utica,* v. *Musena*, 3 *Barb., ch.* 586; *Freeman on Executions, secs.* 54, 352.

4. LIEN: Acquired by filing bill.
The only lien that the appellants have is by virtue of having brought this suit, and served process upon the appellees. And as the judgment creditor, who first files his bill and serves his subpœna, obtains a lien upon the assets, which his bill seeks to reach, Jones, McDowell & Co. will have preference over Townsend, in the distribution of the fund. *Freeman on Executions, sec.* 434; *Jackson* v. *Robinson*, 64 *Mo.*, 290; *Kimberling* v. *Hartley*, 1 *McCrary*, 136, and cases cited.

The decree of the Chancellor is reversed, and this cause is remanded to the Pulaski Chancery Court, with directions to enter a decree there, charging the land with a trust in favor of the appellants; and that unless their debts be paid by a short day, the premises be sold and the proceeds applied,

NOVEMBER TERM, 1881.        29

Jones, McDowell & Co. et al. v. Arkansas Mechanical and Agricultural Co.

first, to the payment of the expenses of such sale, and the costs of this suit, both here and below; secondly, to the payment of the judgment of Jones, McDowell & Co., computing the interest thereon at the rate of ten per cent. per annum from the rendition thereof by the justice; thirdly, to the payment of the several judgments recovered by Townsend, and the surplus, if any, to be returned to the State Fair Association. The judgment of Jones, McDowell & Co., as copied in the transcript, purports to carry interest at the rate of eighteen per cent. per annum; but the contract for the higher rate was merged in the judgment, as held in *Badgett* v. *Jordan*, 32 *Ark.* 154; and *Miller* v. *Kempner*, 32 *Ark.*, 573.

HARRISON, J., dissenting. I am unable to concur in the opinion in this case.

I think, if there might be a sale of the property, if the appellants be not paid, as is directed, that the $4,000 paid by Weeks in the purchase of it at the foreclosure sale, ought, before their claims are satisfied out of the proceeds, to be refunded to the Arkansas State Fair Association. As to so much thereof as went to satisfy the decree, it seems to me clear beyond question; and if the appellants had no liens, as the opinion holds, it is equally so, as to the remainder.

I am, however, of the opinion that they did have liens. No particular day was named in the executions upon which the constable was required to return them. The Statute (*sec.* 3792 *Gantt's Digest*) says that the execution "must be dated as on the day on which it is issued, and made returnable *within* thirty days thereafter." It was not necessary that the constable should have retained them in his hands until the last day within which they were returnable; but if the facts warranted it, he had the right to make the returns he did on any day within the thirty days after their

date, or during their life, and his returns were conclusive as to the facts stated in them. *Lovegrove* v. *Brown*, 6 *Maine*, 592; *Dana* v. *Banks*, 6 *J. J. Marsh*, 219; *Bowen* v. *Parkhurst*, 24 *Ill.*, 257; *Thornton* v. *Lane*, 11 *Ga.*, 459; *Wilcox* v. *Ratcliff*, 5 *Blackf.*, 561; *Forbes* v. *Waller*, 25 *N. Y.*, 430; *Renaud* v. *O'Brien*, 35 *N. Y.*, 99; *Tyler* v. *Willis*, 33 *Barb.*, 327; *Freeman on Executions, sec.* 353.

But if such an objection could possibly be raised, it could only be directly by motion to set aside the return, and not in a collateral proceeding. *Tyler* v. *Willis*, *supra; Sterling* v. *Levy*, 10 *Abb. Pr.*, 426.

Townsend's lien, presuming as I do that he had one, was junior to that of Jones, McDowell & Co., and was extinguished by the sale under their execution, which, as a matter of course, also extinguished theirs.

If the appellants never had liens on the property, how could they, then, have any on the proceeds of the sale, or the surplus, after paying Wait?

But Jones, McDowell & Co. are not now creditors. Their judgment was satisfied by their purchase of the equity of redemption in the property at the sale under their execution. If they had a lien, this was most assuredly the case.

And if the appellants had no liens, their claims were not superior to those of the other creditors, who were paid out of the surplus. A debtor has the right to prefer one creditor to another.

Weeks, being a director of the company, was prohibited by public policy from purchasing the property—but there was not, so far as I can see, the slightest ground in the evidence for imputing to him bad faith or unfairness. Indeed, his conduct appears to have been characterized by great fairness and liberality. Nor can I see any cause for attaching blame or censure to the other stockholders of the old com-

pany, who after the purchase, became associated with him in the new. There was no evidence whatever that they contemplated, when he purchased, forming a new company, and he swears in his deposition that he purchased for himself only.

But if bad faith had existed, the money paid in the purchase should nevertheless be paid back, for "he who seeks equity must do equity."

I think the decree of the court below was right, and should not be disturbed.