ARKANSAS TEACHER RETIREMENT SYS. *v.*
CORONADO PROPERTIES, LTD., A California Limited
Partnership

CA 90-68                                    801 S.W.2d 50

Court of Appeals of Arkansas
Division I
Opinion delivered December 5, 1990

*Wilson & Associates, P,.A.*, by: *Charlene D. Bilheimer*, for appellant.

18

*Steve Clark*, Att'y Gen., for appellant State of Arkansas.

*Daily, West, Core, Coffman & Canfield*, by: *Stanley A. Leasure*, for appellee.

JOHN E. JENNINGS, Judge. This appeal is from a judgment of the Sebastian County Chancery Court holding that appellee, a junior mortgagee, is entitled to the proceeds of a fire insurance policy. We affirm the chancellor's ruling.

Appellant, Arkansas Teacher Retirement System (ATRS), held a note and first mortgage on an apartment project in Fort Smith. On May 24, 1984, appellee, Coronado Properties, owner of the property, conveyed the apartment complex to French Village Investment Company, by general warranty deed and French Village assumed the indebtedness owed ATRS and executed a "Wrap-Around Purchase Money Mortgage" in favor of Coronado. The mortgage held by ATRS required French Villager to insure the property against loss for ATRS' benefit, and the insurance policy contained a standard mortgage clause naming ATRS as mortgagee. Coronado was not listed on the policy as a mortgagee or loss payee.

The apartment complex was damaged by fire on December 8, 1988, and the insurance policy in effect on the date of loss named ATRS' servicing agent, Worthen Mortgage Corporation, as mortgagee. Several months afterward, ATRS filed suit to foreclose its first mortgage. ATRS was awarded a judgment *in rem* for $1,366,061.67, and Coronado was given an *in rem* judgment for $195,144.76, and its judgment lien was made inferior to the lien of ATRS. ATRS, the sole bidder at the commissioner's sale, purchased the property in its damaged condition for a bid in excess of its judgment. The court confirmed the sale, and ATRS entered its "Satisfaction of Judgment" on September 17, 1989.

Prior to purchasing the property, ATRS had filed its proof of loss in the amount of $121,300.00 with the insurance carrier. At that time, the loss had not been settled and no repair had been made to the December 1988 fire damage. After ATRS purchased the property and entered its satisfaction of judgment, a check in the amount of $119,300.00 was tendered by the insurance company in full settlement of the fire loss. The check was made

payable to ATRS' agent, Worthen Mortgage Corporation; French Village; and Jerry Mitchel, general partner for Coronado. French Village negotiated the check for payment; however, ATRS and Coronado both claimed the insurance proceeds. By agreed order, the proceeds were interpled into the registry of the court pending a determination of which party was entitled to them.

After a hearing on the merits, the court entered judgment for Coronado. It held that ATRS was not entitled to the insurance proceeds because its judgment had been satisfied at the commissioner's sale. It further found that the wrap-around mortgage held by Coronado created a duty on the part of French Village to insure the property for the benefit of Coronado and, therefore, Coronado was entitled to the insurance proceeds under an equitable lien theory even though there was no loss payable clause in its favor in the policy.

For its first point, ATRS contends that a strict interpretation of the language contained in its mortgage contract assumed by French Village and French Village's insurance policy naming its agent as mortgagee conclusively establishes that it had an absolute legal right to the insurance proceeds. French Village's insurance policy contained a standard or union mortgage clause which provides as follows:

11. Mortgage Clause - Applicable Only to Buildings.
This clause is effective if a mortgagee is named in the Declarations. Loss to buildings shall be payable to the named mortgagee, as interest may appear under all present or future mortgages on the buildings described in the Declarations in order of precedence of mortgages on them. As it applies to the interest of any mortgagee designated in the Declarations, this insurance shall not be affected by any of the following:

a. any act or neglect of the mortgagor or owner of the described buildings;

b. any foreclosure or other proceedings or notice of sale relating to the property;

c. any change in the title or ownership of the property;

. . . .

When a mortgagee's interest in property is protected by a standard or union mortgage clause, the parties have effected a pre-appropriation of the insurance proceeds and the proceeds cannot be used for another purpose without consent of both parties. *Sharp* v. *Pease*, 193 Ark. 352, 355, 99 S.W.2d 588, 590 (1936); *Bonham* v. *Johnson*, 98 Ark. 459, 461, 136 S.W. 191, 192 (1922). ATRS concludes that, because it was protected by a standard or union mortgage clause and it is the only mortgagee listed on the policy, it has all legal and equitable right to the insurance proceeds and to hold otherwise is to disregard the specific contract language. This conclusion, however, ignores the chancellor's finding that it no longer has a legal or equitable right to the proceeds because its debt has been satisfied in full.

■ While the specific issue presented here has not been addressed by our courts, the prevailing rule in other jurisdictions is that a mortgagee forfeits its right to proceeds from an insurance policy when the loss occurs prior to the foreclosure and the amount bid at the foreclosure sale is sufficient to satisfy the mortgagee's debt. Both of these conditions have been met here.

As in the case at bar, the owner's insurance policy in *Northwestern National Insurance Co.* v. *Mildenberger*, 359 S.W.2d 380 (Mo. Ct. App. 1962), contained a standard mortgage clause making loss or damage under the policy payable to its mortgagee "as interest may appear," and provided that the mortgagee's rights would not be invalidated by any act of the mortgagor. 359 S.W.2d at 382. The deed of trust in *Northwestern* also gave the trustee the "privilege and authority to make proof of loss and adjust and collect insurance . . . [and] assign policies to purchaser at foreclosure. . .," 359 S.W.2d at 385. In interpreting this language, the court in *Northwestern* stated:

> The provision giving the note holder the privilege to adjust and collect the insurance must be read in context with the rest of the paragraph. When that is done, it is apparent that whatever privileges the holder of the note is given are for the purpose of securing the payment of the note. These privileges were never intended to extend beyond their ultimate purpose of protecting the security for the payment of the note. Once the note is paid, they have no

further function. If the debt is not paid, the security covered by the deed of trust is to be available to pay it; and to see that the security, the property covered by the deed of trust, will be available to do so, the mortgagee is required to purchase insurance and the mortgagee given certain privileges as to that insurance. . . .

In Hartford Fire Insurance Company v. Bleedorn, 235 Mo. App. 286, 132 S.W.2d 1066 at 1. c. [7, 8] page 1072, this court held that the phrase, "as its interest may appear" in a standard union mortgage clause refers to the amount of the debt owed to the mortgagee and secured by the deed of trust and "* * * does not refer to appellant's (mortgagee's) interest in the property."

*Northwestern*, 359 S.W.2d at 385-86.

Holdings similar to that in *Northwestern* are found in other jurisdictions. "The law in most jurisdictions seems to be that if the mortgage debt is satisfied by the proceeds of sale, as reflected in the mortgage or deed of trust in this case, the mortgagee is entitled to no further payment on account thereof." *Helmer* v. *Texas Farmers Inc. Co.*, 632 S.W.2d 194, 196 (Tex. Ct. App. 1982). If the mortgagee has bid in the full amount of its secured debt at the sale, it thereby satisfies its lien and loses all entitlement to any insurance proceeds. *Sportsmen's Park, Inc.* v. *New York Property Ins. Underwriting Ass'n*, 97 A.D.2d 893, 470 N.Y.S.2d 456, 459 (1983); *Lembo* v. *Parks*, 372 N.E.2d 1316, 1317 (Mass. App. Ct. 1978).

Where . . . the loss precedes the foreclosure, the rule is different since the mortgagee has an election as to how he may satisfy the mortgage indebtedness by two different means. He may look to the insurance company for payment as mortgagee under the New York Standard Mortgage clause and may recover, up to the limits of the policy, the full amount of the mortgage debt at the time of the loss. In this event he would have no additional recourse against the mortgagor for the reason that his debt has been fully satisfied.

The second alternative available to the mortgagee is satisfaction of the mortgage debt by foreclosure. If the

mortgagee elects to pursue this latter option, and the foreclosure sale does not bring the full amount of the mortgage debt at the time of the loss, he may recover the balance due under the insurance policy as owner. If the foreclosure does fully satisfy the mortgage debt, he, of course, has no additional recourse against the insurance company, as his debt has been fully satisfied.

*Nationwide Mutual Fire Ins. Co.* v. *Wilborn*, 279 So.2d 460, 463 (Ala. 1973) (citations omitted).

The rationale for the rule preventing a mortgagee from claiming insurance benefits after it has bid its total debt at the foreclosure sale was explained in *Smith* v. *General Mortgage Corporation*, 402 Mich. 125, 261 N.W.2d 710 (1978):

"The rule is not harsh and it is eminently practical. None disputes that the mortgagee is entitled to recover only his debt. Any surplus value belongs to others, namely, the mortgagor or subsequent lienors. Indeed, it is not conceivable that the mortgagee could recover a deficiency judgment against the mortgagor if it had bid in the full amount of the debt at foreclosure sale. To allow the mortgagee, after effectively cutting off or discouraging lower bidders, to take the property—and then establish that it was worth less than the bid—encourages fraud, creates uncertainty as to the mortgagor's rights, and most unfairly deprives the sale of whatever leaven comes from other bidders."

261 N.W.2d at 712 (emphasis deleted) (quoting *Whitestone Sav. & Loan Ass'n* v. *Allstate Ins. Co.*, 28 N.Y.2d 332, 336-37, 270 N.E.2d 694, 697, 321 N.Y.S.2d 862, 866 (1971)).

We have said that a mortgagee can retain only so much of the insurance proceeds to cover his interest in the property. *See Wilbanks & Wilbanks, Inc.* v. *Cobb*, 269 Ark. 936, 939, 601 S.W.2d 601, 603 (Ark. App. 1980). "[W]hen a mortgagee is named as loss payee in its mortgagor's insurance policy, and a loss occurs, the mortgagee is entitled to enough of the proceeds to satisfy the mortgage indebtedness." *Echo, Inc.* v. *Stafford*, 21 Ark. App. 201, 205, 730 S.W.2d 913, 915 (1987).

We conclude that the chancellor correctly found that

ATRS' bid at the foreclosure sale, which satisfied its judgment, extinguished its rights to the proceeds from the insurance policy.

For its second and third points, ATRS argues that the chancellor erred in finding the "wrap mortgage" French Village gave Coronado created a duty on the part of French Village to insure the property for the benefit of Coronado and, therefore, Coronado was not entitled to an equitable lien on the proceeds of the insurance policy.

The wrap mortgage required French Village *for the benefit of Coronado* to "observe the covenants and agreements on the part of the 'borrower' to be performed and/or observed under the terms of the Underlying Notes and the Underlying Mortgages . . . ." It is undisputed that ATRS' mortgage, the "underlying mortgage," specifically required insurance. Construing this mortgage as a whole, the chancellor correctly interpreted the wrap mortgage to require French Village to maintain insurance on the property for the benefit of ATRS and Coronado.

The fact that Coronado was not listed on the insurance policy as loss payee did not defeat its claim to an equitable lien on the proceeds. Where an insurance policy is procured by a mortgagor under an agreement to insure for the mortgagee's benefit, the proceeds *recovered* by the mortgagor are held in trust for the mortgagee, and the mortgagee has an equitable lien on the proceeds of the insurance for the satisfaction of his mortgage, regardless of whether the policy is made payable to him. *Hatley* v. *Payne*, 25 Ark. App. 8, 13, 751 S.W.2d 20, 22 (1988). *See also Nat'l Bedding & Furniture Indus., Inc.* v. *Clark*, 252 Ark. 780, 783, 481 S.W.2d 690, 691-92 (1972); *Sharp* v. *Pease*, 193 Ark. at 354-55, 99 S.W.2d at 590; *Wiener* v. *Sentinel Fire Ins. Co.*, 87 F.2d 286, 288 (2d Cir. 1937); *Jeffreys* v. *Boston Ins. Co.*, 202 N.C. 368, 162 S.E. 761, 762-63 (1932); *Shelton* v. *Providence Washington Ins. Co.*, 131 S.W.2d 330, 332 (Tex. Civ. App. 1939).

ATRS cites *Hatley*, 25 Ark. App. at 13, 751 S.W.2d at 22, as authority for its contention that an equitable lien theory cannot be applied in favor of a mortgagee where a union mortgage clause exists naming a specific mortgagee. ATRS' reliance is misplaced. In *Hatley*, we held that the appellants, who were not listed as loss payees in the policy, were not entitled to an equitable lien on the

insurance proceeds because the insured committed arson. Because their rights to the proceeds could be no greater than the rights of the insured, they could not recover under the insurance policy. Here, there has been no act by French Village which has caused it to forfeit its rights to the proceeds.

■ We also disagree with ATRS' argument that, because Coronado held only an *in rem* judgment, its judgment was extinguished when the property was sold at the foreclosure sale. A sale of property under a chancery decree to enforce a paramount lien extinguishes a junior lien *or* transfers it to the proceeds of the sale. *Jones, McDowell & Co.* v. *Arkansas Mech. and Agl. Co.*, 38 Ark. 17, 27-28 (1881). A mortgagee is bound to pay to the junior mortgagee any proceeds remaining after discharge of its original debt. *Walton* v. *Gen. Am. Life Ins. Co.*, 383 S.W.2d 854, 856 (Tex. Civ. App. 1964). After ATRS' mortgage was satisfied, the insurance proceeds remained as additional funds for the satisfaction of the junior liens.

■ ATRS' argument that Coronado is not entitled to the insurance proceeds because it comes to court with unclean hands is also without merit. ATRS has not been injured because its judgment was fully satisfied at the foreclosure sale. A party must prove that he was injured in order for the unclean hands doctrine to apply. *Sandusky* v. *First Nat'l Bank*, 299 Ark. 465, 468, 773 S.W.2d 95, 97 (1989).

Affirmed.

CORBIN, C.J., and ROGERS, J., agree.