STATE FARM FIRE & CASUALTY COMPANY  *v.*
Sadie ANDREWS

04-1336                                              210 S.W.3d 896

Supreme Court of Arkansas
Opinion delivered June 23, 2005

[Rehearing denied September 8, 2005.]

Snellgrove, Langley, Lovett & Culpepper, by: Todd Williams, for appellant.

Henry Law Firm, PLC, by: Troy Henry, for appellee.

Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., by: Blair Evans and Bradley E. Trammell, for amicus curiae Wells Fargo Home Mortgage.

DONALD L. CORBIN, Justice. Appellant State Farm Fire and Casualty Company appeals the order of the Craighead County Circuit Court granting summary judgment to Appellee Sadie Andrews in her suit against State Farm for a loss sustained to her home as a result of a fire. For reversal, State Farm argues that the trial court erred in determining that Andrews was entitled to the proceeds of the policy even though she no longer had any ownership in the home following a foreclosure sale. It argues that it satisfied its obligation to pay under the policy when it tendered a check payable to Andrews and her mortgagee, Wells Fargo Bank. State Farm also argues that the trial court erred in awarding Andrews attorney's fees and penalty, pursuant to Ark. Code Ann. § 23-79-208 (Repl. 2004). Jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1-2(b)(1), as it raises issues of first impression. We affirm the grant of summary judgment, but reverse the award of attorney's fees and penalty.

The following facts are not in dispute. Andrews purchased a home located at 2205 Clover Drive in Jonesboro in September 2001. The mortgage on the home was owned by Wells Fargo Bank. Insurance on the home was purchased by Andrews from State Farm. Sometime in late January or early February 2003, Wells Fargo began foreclosure proceedings on Andrews's home, because Andrews was in default on her mortgage payments. On March 5, 2003, Andrews's home was damaged by fire. She immediately made a claim under her homeowner's insurance with State Farm. State Farm began to process her claim, but before it completed an estimate of the costs to repair the damage, Wells Fargo foreclosed on the property. The foreclosure sale took place on March 28, 2003, and Wells Fargo was the highest bidder. It paid the full amount of the mortgage for the property, and a mortgagee's deed was issued to it that same date.

State Farm had no knowledge of the foreclosure, and on May 2, 2003, it tendered to Andrews a check payable to Andrews and Wells Fargo, in the amount of $33,903.84. On June 5, 2003, Andrews, via her attorney, returned the check to State Farm, stating that the amount was insufficient to cover the loss. Her letter reflected that she had obtained three different repair estimates, all of which exceeded $60,000.00. She thus sought the policy limits of $46,500.00.

On June 9, 2003, State Farm discovered that Wells Fargo had instituted foreclosure proceedings on the Andrews home. Its claims representative notified Andrews's attorney of this fact. On July 3, 2003, Andrews filed suit against State Farm for the full amount of the policy. State Farm answered and tendered a check in the amount of $43,065.52, based on a revised estimate it had done after consulting with the contractor that Andrews had selected. The check was made payable to both Andrews and Wells Fargo. Andrews again rejected the tender, insisting that she was due the full amount of the policy.

State Farm was subsequently informed that Wells Fargo had employed a contractor to make repairs to the home and that such repairs were already underway. Wells Fargo indicated that the repairs could be done for the amount of State Farm's first estimate, $33,903.84. Pursuant to its communication with Wells Fargo, on October 20, 2003, State Farm tendered a check payable to Wells Fargo and Andrews in the amount of $33,903.84. Wells Fargo negotiated the check without Andrews's signature. State Farm explained to the trial court that it had tendered payment to Wells Fargo based on representations made by the bank that the March 28, 2003, foreclosure was not valid, because Wells Fargo did not know that the home had been damaged by fire prior to its bidding on the property for the full amount of the indebtedness. To this end, on October 8, 2003, Wells Fargo filed a complaint asking the circuit court to void the foreclosure sale of March 28. For reasons unknown, however, Wells Fargo later sought and was granted a voluntary dismissal of that complaint.

On December 1, 2003, State Farm filed a motion for summary judgment on the ground that its payment of $33,903.84 had paid for the repairs to the property and that the foreclosure had extinguished Andrews's interest in the home. The trial court denied State Farm's motion on January 9, 2004.

Thereafter, on March 4, 2004, State Farm filed a third-party complaint against Wells Fargo, alleging that Wells Fargo had

misled State Farm as to the date and validity of the foreclosure. State Farm also alleged that any claim that Andrews had was more properly addressed to Wells Fargo, since the bank had negotiated the check without Andrews's signature or permission. State Farm asserted that it should not be forced to pay for the loss twice, and that if it should be found liable to Andrews, Wells Fargo should have to refund the money previously paid by State Farm. State Farm's claims against Wells Fargo were later severed on Andrews's motion, and they are still pending before the trial court.[1]

On March 26, 2004, Andrews filed a motion for partial summary judgment. The motion reflected that the pertinent facts were not in dispute, namely that Andrews suffered a loss due to fire on March 5, 2003, and that Wells Fargo foreclosed on her home on March 28, 2003, and the property sold for an amount sufficient to pay off the mortgage. She asserted that she was entitled to the insurance proceeds as a matter of law, on the theory that once the mortgage indebtedness was satisfied, Wells Fargo had no interest in the insurance proceeds. Andrews relied solely on the court of appeals' decision in *Arkansas Teacher Retirement Sys. v. Coronado Properties, Ltd.*, 33 Ark. App. 17, 801 S.W.2d 50 (1990) ("*ATRS*"). In that case, the court of appeals recognized the general rule that a mortgagee forfeits its right to the proceeds from an insurance policy when the loss occurs prior to the foreclosure and the amount bid at the foreclosure sale is sufficient to satisfy the mortgagee's debt. This rule is known as the "foreclosure after loss" rule. The court of appeals pointed out that the rule is based on the theory that when a loss occurs prior to foreclosure, the mortgagee has a choice whether to seek the insurance proceeds or pursue foreclosure sale of the mortgaged property.

State Farm argued that the court of appeals' decision was not dispositive of this case, because Wells Fargo was not made aware by Andrews that the fire had occurred. Thus, State Farm contended that Wells Fargo's decision to pursue foreclosure was not an election of remedies. It argued that without knowledge of the fire, Wells Fargo could not have known that it had a choice in this instance. State Farm relied on cases from other jurisdictions that have carved out an exception to the "foreclosure after loss" rule where the mortgagee lacks knowledge of the loss. Additionally,

---

[1] Despite these unresolved third-party claims, this appeal is properly before us, as the trial court entered an order certifying the issues between State Farm and Andrews as immediately appealable, pursuant to Ark. R. Civ. P. 54(b).

State Farm argued that Andrews would be unjustly enriched if the trial court granted summary judgment to her, because she no longer had any interest in the property and the repairs had already been made by Wells Fargo.

On July 20, 2004, the day of trial, the trial court granted Andrews motion for partial summary judgment. Relying on the court of appeals' decision in *ATRS*, 33 Ark. App. 17, 801 S.W.2d 50, the trial court ruled that the mortgage agreement was effectively terminated by the foreclosure. The court explained: "I'm ruling that at the time [Wells Fargo] elected to foreclose — and assuming the election was made without knowledge that the fire existed — that is just — they didn't protect their own interest by examining the property before they proceeded to a foreclosure." The trial court ruled that the effect of the foreclosure was that it terminated any interest Wells Fargo had in the property. The trial court did rule that it would allow State Farm to pursue its theory of unjust enrichment. However, in the written order granting partial summary judgment, entered on August 6, 2004, the trial court found that Andrews was entitled to the proceeds for the insurance loss and that the only issue for the jury to decide was the amount of the loss.

Thereafter, a jury was empaneled to hear testimony about the amount of the loss. Andrews presented evidence of the three estimates she obtained to repair the house, all of which exceeded $60,000.00. She also presented testimony from the contractor that she had selected as to the amount of the damage. State Farm then presented evidence that the damage amounted to $43,065.52, which was the amount that State Farm had tendered with its answer and which was rejected by Andrews. The jury returned a verdict that reflected the amount offered by State Farm, $43,065.52. Following the jury's verdict, the trial court awarded attorney's fees and penalty to Andrews, pursuant to section 23-79-208. This appeal followed.

For its first point on appeal, State Farm argues that the trial court erred in granting partial summary judgment to Andrews under the "foreclosure after loss" rule. It acknowledges the general rule, but asserts that an exception to that rule should be applied in this case based on Wells Fargo's lack of knowledge of the fire prior to its successful bid on the property at foreclosure sale. It contends that to apply the rule in this case results in an unjust enrichment to Andrews.

This court has not heretofore determined whether to recognize such exceptions to the general rule. Nevertheless, we decline to reach the merits of this issue, as we conclude that Wells Fargo's alleged lack of knowledge is a defense peculiar to Wells Fargo, who was not a party to these proceedings. State Farm lacks standing to challenge the validity of the foreclosure, as it was neither a party to the mortgage, nor a person having an interest in the property.

A similar situation was presented in *Merrimack Mut. Fire Ins. Co. v. Allied Fairbanks Bank*, 678 S.W.2d 574 (Tex. Ct. App., 14th Dist. 1984). There, the home was damaged by fire five days before the foreclosure sale. The appellee bank, as mortgagee, presented its claim for the insurance proceeds, but the appellant insurer denied the claim on the ground that the foreclosure had satisfied all but $101.70 of the mortgage debt. The mortgagee filed suit for reformation of the foreclosure documents on the basis of mutual mistake, alleging that after the fire occurred, the parties had agreed that the property would be sold for the amount owed on the note, less the amount of insurance proceeds to be collected. The trial court entered judgment reforming the foreclosure documents. The insurer appealed the reformation. The Texas appellate court declined to address the bulk of the appeal, on the ground that the insurer lacked standing to challenge the reformation of documents that formed part of an agreement to which the insurer was neither a party, nor a third-party beneficiary. The appellate court recognized that the insurer may have a substantial interest in the enforcement or reformation of the agreement, but that such interest did not grant it the right to complain in that instance.

Likewise, in *Lloyd Capital Corp. v. Behrmann*, 122 A.2d 783, 505 N.Y.S.2d 670 (Sup. Ct., App. Div. 1986), the New York appellate court affirmed the lower court's denial of Republic Insurance Company's motion to vacate a deficiency judgment in a mortgage-foreclosure action. The court held that the insurer had no standing to challenge the entry of the judgment. The court explained: "Republic is not an 'interested person' merely because, as a result of the deficiency judgment, it may be liable (under a fire insurance policy issued by it to the defendant Serge Behrmann), to the plaintiff as mortgagee of the subject premises and as an additional insured." *Id.* at 784, 505 N.Y.S.2d at 670 (citation omitted).

In the present case, State Farm argues that the trial court erred in determining that Andrews was entitled to the insurance

proceeds. It asserts that Wells Fargo, as mortgagee, is the proper payee of the insurance proceeds, on the theory that when Wells Fargo purchased Andrews's home at the foreclosure sale, it had no knowledge of the fact that the home had been damaged by fire. It urged the trial court to set aside or grant a reformation of the foreclosure sale and return the parties to the positions they were in prior to the foreclosure. State Farm cites cases from other jurisdictions that have set aside the foreclosure sale and allowed the mortgagee to collect the insurance proceeds. However, in each of those cases, the dispute was between the mortgagee and the mortgagor, and it was the mortgagee that requested the equitable remedies of setting aside or reformation of the foreclosure sale. We agree with the reasoning in the foregoing cases that an insurer lacks standing to set aside a foreclosure sale between a mortgagor and mortgagee, where the insurer is neither a party to the mortgage, nor a third-party beneficiary. Where, as here, State Farm's only interest was to pay the insurance proceeds to the rightful owner, it has no interest in the foreclosure itself.

Moreover, the fact that State Farm has already paid the claim to Wells Fargo is of no benefit to the insurer. As stated above, State Farm's third-party claim against Wells Fargo is still pending in the trial court. If it prevails, it will recoup the money it paid to the bank. The present litigation is solely between State Farm and Andrews.

■ Based on the foregoing, we affirm the trial court's grant of partial summary judgment to Andrews. We realize that the trial court's ruling does not address the issue of State Farm's lack of standing to raise Wells Fargo's defense. However, this court has held on numerous occasions that it will affirm the trial court's judgment if it reached the right result, even though it may have announced the wrong reason. *See Warr v. Williamson*, 359 Ark. 234, 195 S.W.3d 903 (2004); *Bright v. Zega*, 358 Ark. 82, 186 S.W.3d 201 (2004); *Middleton v. Lockhart*, 355 Ark. 434, 139 S.W.3d 500 (2003); *Dovers v. Stephenson Oil Co., Inc.*, 354 Ark. 695, 128 S.W.3d 805 (2003).

■ For its second point on appeal, State Farm argues that the trial court erred in refusing to allow it to put on a defense at trial, other than to contest the amount of damages. State Farm wanted to be able to argue to the jury that after the foreclosure, Andrews had no interest in the property, could not have made repairs to the home, and therefore did not sustain any damages.

This argument is merely an extension of the argument made in the first point and need not be addressed again. The other defense that State Farm sought to present to the jury was that it had met its obligations by paying Wells Fargo for the repairs, and that the controversy was therefore between Andrews and Wells Fargo. Implicit in this argument was State Farm's assertion that it had been misled as to the ownership of the property and the timing of the foreclosure by Wells Fargo. Essentially, State Farm is arguing that the trial court erred in severing its claim against Wells Fargo from the trial involving Andrews.

We will not address the merits of this point because State Farm has failed to cite to any legal authority to support its argument. This court has repeatedly refused to address arguments raised on appeal that are not supported by legal authority. *See, e.g., Ouachita R.R., Inc. v. Circuit Court of Union County,* 361 Ark. 333, 206 S.W.3d 811 (2005); *Shelnutt v. Laird,* 359 Ark. 516, 199 S.W.3d 65 (2004); *Gwin v. Daniels,* 357 Ark. 623, 184 S.W.3d 28 (2004); *City of Greenbrier v. Roberts,* 354 Ark. 591, 127 S.W.3d 454 (2003). Simply put: "We will not do the appellant's research for him." *Id.* at 594, 127 S.W.3d at 456. We thus affirm on this point.

For its third and final point, State Farm argues that the trial court erred in granting attorney's fees and penalty to Andrews pursuant to section 23-79-208. Andrews maintained that such an award was warranted because she had been forced to file suit against State Farm to pay the loss, and she had received an amount at trial that was within twenty percent of the amount she had sought.

State Farm asserts that the lawsuit was not necessary, as it had been working with Andrews and her contractor all along to arrive at a fair estimate for the damage, and it had never denied the legitimacy of the claim. State Farm also asserts that the fact that the jury's award was within twenty percent of her demand is irrelevant, as the amount the jury awarded is the exact amount tendered by State Farm and rejected by Andrews. We agree with State Farm that it was error to award fees and penalty in this case.

Section 23-79-208(a)(1) provides that in all cases where loss occurs, and the insurance company fails to pay the loss within the time specified in the policy after demand has been made, the insurance company "shall be liable to pay the holder of the policy

or his or her assigns, in addition to the amount of the loss, twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorney's fees for the prosecution and collection of the loss." Subsection (d) provides:

> Recovery of less than the amount demanded by the person entitled to recover under the policy shall not defeat the right to the twelve percent (12%) damages and attorney's fees provided for in this section *if the amount recovered for the loss is within twenty percent (20%) of the amount demanded or which is sought in the suit.*" (Emphasis added.)

This court has interpreted section 23-79-208 as providing that "[i]n the event an insurer wrongfully refuses to pay benefits under an insurance policy, the insured may recover the overdue benefits, twelve percent (12%) damages upon the amount of the loss, and reasonable attorneys' fees." *Phelps v. U.S. Credit Life Ins. Co.*, 340 Ark. 439, 442, 10 S.W.3d 854, 856 (2000) (quoting *Northwestern Nat'l Life Ins. Co. v. Heslip*, 309 Ark. 319, 326-27, 832 S.W.2d 463, 467 (1992) (quoting *State Farm Fire & Cas. Co. v. Stockton*, 295 Ark. 560, 565, 750 S.W.2d 945, 948 (1988))). The purpose of section 23-79-208 is to punish the unwarranted delaying tactics of insurance companies. *National Std. Ins. Co. v. Westbrooks*, 331 Ark. 445, 962 S.W.2d 355 (1998); *Farm Bureau Mut. Ins. Co. v. David*, 324 Ark. 387, 921 S.W.2d 930 (1996).

In *Westbrooks*, 331 Ark. 445, 962 S.W.2d 355, this court held that no penalty or fees were available where the insured did not recover within twenty percent of the amount demanded. This court set out the policy for denying the penalty and fees in such a situation:

> It could never have been the purpose of the legislature to make the insurance company pay a penalty and attorneys' fees for contesting a claim that they did not owe. Such an act would be unconstitutional. The companies have the right to resist the payment of a demand that they do not owe. *When the plaintiff demands an excessive amount he is in the wrong. The penalty and attorneys' fees is for the benefit of the one who is only seeking to recover, after demand, what is due him under the terms of his contract, and who is compelled to resort to the courts to obtain it.*

*Id.* at 449, 962 S.W.2d at 357 (emphasis added) (quoting *Pacific Mut. Life Ins. Co. v. Carter*, 92 Ark. 378, 388, 123 S.W. 384, 387 (1909)).

In the present case, the record does not support the conclusion that State Farm wrongfully refused to pay Andrews's claim or that it engaged in unwarranted delaying tactics. Prior to the time that Andrews filed suit, the only disputed issue with State Farm was the amount of the claim. State Farm initially offered $33,903.84. Andrews rejected that amount and demanded the full policy limits of $46,500, on the basis that all three estimates she had received were in excess of $60,000. State Farm then attempted to work with Andrews's contractor to reconcile the difference in their estimates. Sometime thereafter, State Farm revised its estimate, taking into consideration that areas of the home that previously could have been cleaned of smoke damage now had to be replaced. As such, the revised estimate was nearly $10,000 more than the first estimate. However, before State Farm could tender its revised estimate, Andrews filed suit. State Farm answered and tendered a check for $43,065.52. Andrews refused the check and continued to demand the full policy limits.

In the trial on damages, the jury found the amount of loss to be $43,065.52, the exact amount that State Farm had tendered and that Andrews had rejected. The fact that the amount awarded by the jury was within twenty percent of the amount Andrews demanded is of no significance in this case. The bottom line is that Andrews was ultimately awarded the same amount that she had refused. Were we to allow attorney's fees and penalty under these circumstances, we would be thwarting the meaning and purpose of section 23-79-208. We thus reverse the trial court's award of attorney's fees and penalty under section 23-79-208.

Affirmed in part; reversed in part.

IMBER, J., dissenting in part.

GLAZE, J., not participating.

ANNABELLE CLINTON IMBER, Justice, dissenting. In reversing the trial court's award of attorney's fees and penalty, the majority correctly notes that the amount Andrews recovered was within twenty percent of the amount she demanded, but then states that it "is of no significance in this case." The plain language of Ark. Code Ann. § 23-79-208 (Repl. 2004) belies such a statement, and thus, I must dissent from that portion of the opinion.

The plain language of section 23-79-208 mandates that an insurer pay damages and attorney's fees when the insurer fails to timely pay the insured. Subsection (a)(1) provides that in all cases

where loss occurs, and the insurance company fails to pay the loss within the time specified in the policy after a demand has been made, the insurance company "*shall* be liable to pay the holder of the policy or his assigns, in addition to the amount of the loss, twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorney's fees for the prosecution and collection of the loss." Ark. Code Ann. § 23-79-208(a)(1) (emphasis added). Subsection (d) provides that the *right* to recover the twelve-percent penalty applies so long as the amount recovered for the loss is within twenty percent of the amount demanded or sought in the suit. Ark. Code Ann. § 23-79-208(d) (emphasis added). In interpreting this statute, we have held that the attorney's fees and penalties attach if the insured is required to file suit, even though judgment is confessed before trial. *Federal Life & Casualty v. Weyer*, 239 Ark. 663, 391 S.W.2d 22 (1965).

The present case meets all the statutory requirements. Here, Andrews's home sustained fire loss on March 5, 2003, and she proceeded with her claim immediately. On May 2, 2003, State Farm issued a check to Andrews for $33,903.84, which Andrews returned, demanding that she was owed the policy limits of $46,500. Two months later and four months after the fire, Andrews filed suit against State Farm to recover for the loss. In its original answer, State Farm denied that the fire caused a total loss of the property and tendered a check to Andrews for $43,065.52. Andrews returned the check and continued to demand the policy limits of $46,500. Thereafter, State Farm amended its answer to deny all liability to Andrews, arguing that after the Wells Fargo foreclosure, she had no claim to any insurance proceeds. State Farm also pursued a motion for summary judgment on this ground. State Farm continued to dispute its liability to Andrews until the circuit court granted Andrews's partial motion for summary judgment and ruled that she was entitled to the proceeds of the insurance policy. Only after the circuit court determined that State Farm was liable to Andrews did State Farm begin contesting the amount of the loss.

Under these facts, it is clear that State Farm did not pay Andrews for her loss within the sixty-day time limit specified in Andrews's policy. Furthermore, the jury awarded Andrews $43,065.52, which amount is within twenty percent of the $46,500 policy limits she demanded in her complaint. Ark. Code Ann. § 23-79-208(d). Thus, Andrews was entitled to receive the twelve percent penalty and attorney's fees.

In reversing the circuit court's grant of the statutory penalty and attorney's fees, the majority relies on language from our decision in *National Std. Ins. Co. v. Westbrooks*, 331 Ark. 445, 962 S.W.2d 355 (1998), but that case is not controlling. In *Westbrook*, we reversed a grant of the penalty and attorney's fees where the insured did not recover within twenty percent of the amount sought in the suit. It was in this context that the court noted, "When the plaintiff demands an excessive amount he is in the wrong." *Id.* at 449, 962 S.W.2d at 357. In light of the statutory language allowing a grant of the penalty and fees when the insured recovers within twenty percent of the amount sought in the suit, the clear import of the above-quoted phrase in *Westbrook* is that the amount an insured demands is considered "excessive" if the insured does not recover within twenty percent. However, if the insured does recover within twenty percent of the amount sought in the suit, as is the case here, the insured's demand will not be considered unreasonable. In other words, under the plain language of the statute, the issue in the case is *not* whether the jury ultimately awarded what the defendant offered to pay; rather, the issue is whether the jury awarded within twenty percent of what the insured demanded in the lawsuit. If the answer to the latter question is in the affirmative, the demand will not be deemed unreasonable or excessive pursuant to the statute. The majority's analysis erroneously implies that the insured must recover all of the amount sought in the suit in order for the demand to be reasonable. Notably, the law did require an insured to recover the entire amount sought for many years, but this harsh position was modified by statutory amendment to allow the insured to recover the penalty and attorney's fees when the award is within twenty percent of the amount demanded or sought. Ark. Code Ann. § 23-79-208(d) (Supp. 1992). The majority's analysis on this point effectively eviscerates the amendment.

As State Farm did not pay Andrews for her losses within the time specified in the policy and Andrews subsequently recovered within twenty percent of the total amount sought in the suit, she is entitled to the twelve-percent penalty and reasonable attorney's fees pursuant to Ark. Code Ann. § 23-79-208. Consequently, I would affirm the trial court on this point and respectfully dissent from that portion of the majority opinion.