4-5541                                                  131 S. W. 2d 627

Opinion delivered June 19, 1939.

*E. W. Brockman,* for appellant.

*Galbraith Gould,* for appellee.

Holt, J.   Appellees, Pinchback Taylor, and Fulton Murphy, Trustee, brought this suit in the Jefferson chancery court. against C. F. Dunnington and Bessie Dunnington, appellants, to foreclose a deed of trust given to secure a note, in the total sum of $2,783.73.

The note and deed of trust were executed April 20, 1929, the note being due and payable one year after date,

bearing interest from date until paid at 8 per cent. per annum. Appellees filed suit on June 4, 1938, which was eight years, one month and fourteen days after the due date of the note.

Appellants defended the action on the ground that it was barred by the five-year statute of limitations. Pope's Digest, § 8933.

Appellees, plaintiffs below, defended against the bar of the statute on the ground that the note in question shows a credit indorsed thereon of $8.50 as of April 1, 1935, that said credit was indorsed on the record in the court house on the same date, April 1, 1935, and attested on November 4, 1936, and that C. F. Dunnington by his acts and conduct acknowledged the debt and thereby tolled the statute of limitations.

The trial court found: "That while the credit of $8.50 indorsed on the note as of April 1, 1935, was not authorized by the defendant, C. F. Dunnington, and was not a voluntary payment on his part, that the statements, acts and conduct on behalf of the defendant, C. F. Dunnington, reasonably inferred and acknowledged on his part of the validity of the debt to Pinchback Taylor, and, therefore, tolled the statute of limitations; that the complaint of plaintiffs should be sustained and that plaintiff, Pinchback Taylor, is entitled to the relief prayed for in his complaint."

From this finding of the chancellor and judgment thereon comes this appeal.

The questions for our consideration are purely ones of fact. If the findings of the chancellor, "that the statements, acts and conduct on behalf of the defendant, C. F. Dunnington, reasonably inferred an acknowledgment on his part of the validity of the debt to Pinchback Taylor and, therefore, tolled the statute of limitations," are not against the preponderance of the evidence, then we do not disturb his findings here. The evidence in this record is conflicting and we do not think it could serve any useful purpose to review it. We think, however, that it supports the chancellor's findings. It is well settled that an oral waiver of the statute of limitations,

or a promise not to plead it, does not fall within a statute requiring written acknowledgment of the outlawed debt. Pope's Digest, § 8943. Suspension of the statute by reason of a promise not to plead it is based on the doctrine of estoppel, and, in order for it to be effective, the promise must be an express one not to plead the statute, or the language of the promise must be such as to clearly convey an intention not to do so, upon which the creditor has a right to rely. See *Burnett* v. *Turner,* 105 Ark. 290, 151 S. W. 249.

But if an oral promise is to have the effect of waiving the statute of limitations; or, expressed differently, if either the conduct or words of the original promissor are such as to justify a court in finding that he intended to lull his creditor into inactivity, there must be some consideration for the conduct, or expressions, or attitude of the promissor.

In the instant case there was such consideration; namely, continued payment of insurance by Taylor.

We are of the view, also, that this case should be affirmed on an additional ground, and that is as appellees contend, that the payments of fire insurance premiums in the total sum of $201.90 by appellant, Taylor, under the terms of the deed of trust in question, tolled the statute of limitations. This court in so far as our search discloses has never passed directly upon this question, and, it, therefore, seems to be one of first impression.

It is undisputed that appellee, Taylor, paid the fire insurance premiums on policies of fire insurance carried on the property in question, each year, beginning with 1930 and continuing through 1937, the total amount of said premiums being $201.90. These policies were issued to appellant, C. F. Dunnington, and he was notified each year of the renewals of this fire insurance and he acquiesced in said payments, though the premiums were all paid by appellee, Taylor.

The deed of trust in question contains the following provisions:

"This sale is on condition that whereas, we are justly indebted to Pinchback Taylor in the sum of $1,500, evi-

denced by our one promissory note of even date herewith, due and payable one year after date, with interest at the rate of 8 per cent. per annum from date until paid and have agreed to pay all taxes and legal assessments assessed against the said property, and to keep the premises insured in the maximum amount obtainable against fire and tornado for the benefit of the said Pinchback Taylor.

"Now, if we shall pay said moneys at the times and in the manner aforesaid, and all the taxes, legal assessments and insurance, then the above conveyance shall be null and void, otherwise to remain in full force and effect.

"But, if we shall fail to pay said taxes or any legal assessments or to procure and pay for the said insurance, then the said Pinchback Taylor may do so, and all sums so expended by the said Pinchback Taylor, and all installments of interest due and unpaid, *shall be added to and become a part of the principal indebtedness hereby secured and shall draw interest from the date of such expenditure* or when said interest was due and unpaid, until paid at the rate of 10 per cent. per annum, and shall be due and payable on demand."

It will be noted that under the terms of the above provisions of the deed of trust Dunnington specifically contracted with Taylor that he, Dunnington, would keep the property in question insured and pay the cost of said insurance in order to protect not only his own interest in the property but the mortgage lien of Taylor, and in the event that Dunnington failed to pay the cost of said insurance that Taylor might himself keep the property insured and pay the premiums and that these payments, which were nothing more than advances for the benefit of Dunnington, in effect made at his request, should be added to and become a part of the principal debt "from the date of such expenditures."

There is nothing in the above provisions that would limit these advances of Taylor to cover these insurance premiums to the life of the deed of trust, or to limit these advances, or payments, to the time within which the note

sued on would not be barred by the statute of limitations. It must be borne in mind that the obligation to pay the debt in question continues indefinitely, and the legal and moral obligation to pay is never cut off until the defense afforded by statute is affirmatively set up and pleaded as a bar to the debt. So that we hold that the above provision in the deed of trust, which provides that the payment of a fire insurance premium on the property in question by Taylor might be added to and become a part of the principal indebtedness *from the date the insurance payment was made,* did not contemplate that such payment must have been made at a time before the debt might be barred by the statute of limitations, but that it did contemplate that these payments, or advances, for fire insurance might be made at any time up to the time of foreclosure, and we hold that these payments, or advances, when made were automatically added to and made a part of the original debt and that under the terms of the above provisions of the deed of trust, or mortgage contract, tolled the statute of limitations.

In a Utah case, *Hess* v. *Anger et ux,* 53 Utah 186, 177 Pac. 232, the court had before it for consideration a deed which, though absolute in form, was treated as a mortgage, and in considering a question similar to the one involved here, said: "So, too, a deed, when intended as a mortgage, may be given to secure an unliquidated claim, or whatever indebtedness may thereafter be contemplated to be contracted between the parties under it and the same foreclosed in a court of equity, 27 Cyc. 1059; *Anglo-California Bank* v. *Cerf,* 147 Cal. 384, 81 Pac. 1081. We find no merit in defendants' plea of the statute of limitations. The plaintiff, in pursuance of the terms of the parol agreement between the parties, and under the deed, continued to pay and discharge the indebtedness against the defendants' property, pay the taxes thereon, and made expenditures for its (the mortgagor) benefit right up to the time of the commencement of the action."

In *Cogswell et al.* v. *Grant,* 34 Nova Scotia Reports 340, the court (quoting headnote) held: "A mortgage made by G. to C., after providing for payment of premi-

ums of insurance by the mortgagor, G., continued: 'And in default thereof, the said C. . . . shall and may, as required, effect, renew, etc., such insurance, and charge all payments made for and in respect thereof, with interest after the rate aforesaid, upon the said mortgaged premises.' *Held,* (affirming the judgment of the trial court), that an amount paid for premium of insurance by the authorized agent of C., was, by the terms of the mortgage, without further act, made part of the principal on which interest was payable, and that the subsequent repayment of this amount by G. was a payment on account of principal which would take the case out of the statute of limitations, and entitle plaintiff to an order of foreclosure and sale.''

The only difference, in principle, between the last cited case and the one at bar is that in the instant case Dunnington did not at any time pay back to Taylor these advances for insurance, whereas in the cited case the mortgager repaid to the mortgagee the amount paid for the fire insurance premium. We think, however, it sound to hold that under the terms of the mortgage contract before us the payment by Taylor of these fire insurance premiums tolled the statute of limitations as to the entire debt.

This court on the extent of the power to contract with reference to the extent of a debt secured by a mortgage, in *State Nat. Bank* v. *Temple Cotton Oil Co.*, 185 Ark. 1011, 50 S. W. 2d 980, said: ''We must interpret the language of this mortgage to mean just what it says—that it secures any indebtedness incurred up to the time of foreclosure. It is a matter of contract between the parties, as there is no limitation upon the right to contract with reference to the extent of the debt secured by a mortgage, and the province of the court is merely to interpret the language and declare the rights of the parties in accordance with their intention as expressed in the language used.''

On the whole case we conclude that the judgment of the chancellor should be affirmed, and it is so ordered.