PULASKI FEDERAL SAVINGS & LOAN ASSOCIATION,
A CORPORATION *v.* DONALD S. WOOLSEY

5-4213                                   414 S. W. 2d 633

Opinion delivered May 15, 1967

*Wright, Lindsey & Jennings, Edward L. Wright, Jr.,* for appellant.

*Reed & Blackburn, C. E. Blackburn,* for. appellees.

J. FRED JONES, Justice. This is an appeal from a decree of the Pulaski County Chancery Court wherein mortgaged property was sold under a decree of foreclosure but a money judgment against the mortgagor was denied.

The record reveals that on March 11, 1964, Donald S. .Woolsey and wife, for value received, gave Pulaski Federal Savings & Loan Association their promissory note for $22,000.00 payable in monthly installments of $141.76 and secured by a mortgage on property owned by Mr. and Mrs. Woolsey. The note contained a thirty day acceleration clause.

On November 12, 1964, the Woolseys conveyed the property to William and Mary Prim, and Mr. and Mrs. Prim assumed payments of the note to Pulaski Federal under an agreement between the Prims and Pulaski Federal, wherein the Woolseys were not released, but were specifically retained as primary obligors on the note. No payment was made on the note from June 1965, until November 12, 1965, when the rights under the acceleration clause were exercised by Pulaski Federal and suit was filed praying a joint and several personal judgment against the Woolseys and the Prims for the balance of the unpaid indebtedness on the note in the amount of $21,571.16, together with interest, attorney's fee. and cost for a foreclosure of the mortgage lien on the property.

The case was tried on August 11, 1966, and on August 30, 1966, th chancellor decreed a personal judg-

ment against the Prims for $21,648.36, together with interest at the rate of ten per centum per annum from March 10, 1966, and ordered sale of the property under foreclosure and the proceeds applied to the judgment. The decree included $500.00 attorney's fee but personal judgment against the Woolseys was denied.

On September 2, 1966, notice was given by the Commissioner in Chancery that the property would be sold on September 29, 1966, under the foreclosure decree. On September 28, 1966, the Woolseys filed a motion in part as follows:

\* \* \*

"As matters now stand, these defendants, Donald S. Woolsey and Betty J. Woolsey, have no monetary interest in the outcome of a forced sale of said property, however, should the plaintiff be successful on appeal in securing the right to a personal judgment, defendants would then have a monetary interest in the outcome of the Commissioner's Sale.

"WHEREFORE, defendants pray that an order be issued from the Court suspending the Commissioner's Sale and appointing a receiver to procure a tenant, collect rents and hold the proceeds of such rents subject to the orders of this Court until a final determination of this matter is determined by the Supreme Court or the time for appeal expires without the perfecting of such appeal."

Also on September 28, 1966, Pulaski Federal filed notice of appeal to this court from that portion of the final decree which denied personal judgment against the Woolseys.

The motion to suspend the Commissioner's sale was denied on September 29, 1966, and on September 29, 1966, the property was sold under the foreclosure decree and Pulaski Federal purchased it for the highest and only bid of $18,000.00.

Pulaski Federal has perfected its appeal to this court relying on the single point for reversal as follows:

"The Court erred as a matter of law in denying personal judgment on the note against the Woolseys."

We agree with the appellant. There is no question but that property may be sold under a mortgage foreclosure and a judgment rendered for the recovery of the debt against the defendant personally. Ark. Stat. Ann. § 51-1106 (1947).

The general rule as announced in 59 C. J. S. § 774 is as follows:

"Effect of Foreclosure

...the personal liability of a mortgagor is released and extinquished by a foreclosure of the mortgage only to the extent of the value of the premises, in the case of a strict foreclosure, or, in the case of a foreclosure and sale, to the extent of the proceeds applicable to the mortgage debt. In other words, if the mortgagor was originally liable for the mortgage debt, he remains liable for any unsatisfied balance, including unpaid costs and expenses. The rule is not affected by the fact that the mortgagee bid in the premises at the foreclosure sale, for much less than their value, if no fraud or inequitable conduct is shown; and the fact the land increased in value after the foreclosure sale, enabling the mortgagee to make a profit, does not affect the liability of the mortgagor. Where a foreclosure sale is not completed, the mortgagor's personal liability for a deficiency is not extinguished."

Between the time the foreclosure suit was filed in this case on November 12, 1965, and the decree was entered on August 30, 1966, a period of nine months, considerable effort was made by appellees to bring the

account current, and considerable indulgence was exercised by appellant in permitting them to do so. Appellees were never able to pay all the delinquent payments and finally appellant refused a partial payment of $188.00 and proceeded with the foreclosure.

Appellees were parties defendant in the foreclosure suit. They filed an answer admitting all the material allegations in the complaint except default in payment which they denied. Appellees filed no counter claim or cross complaint and upon final decree filed no appeal or cross appeal to this court.

Appellees now seem to argue that if appellant had accepted the payment of $188.00 tendered by appellees, and had accepted other payments in similar amounts which appellees could and would have made; and if appellant had credited all the payments so made to the principal and interest on the note rather than principal, interest, insurance and taxes which were included in the agreed monthly payments; then the payments of principal and interest would have been within $199.00 of current, and for that reason it was inequitable for appellant to accelerate the payment of the remaining installments on the note. We find this argument without merit.

All the payments made by appellees were properly credited to the indebtedness and were properly deducted in the chancellor's decree.

The case of *Crone* v. *Johnson,* 240 Ark. 1029, 403 S. W. 2d 738 (1966) cited by appellees, is not in point with the case here. In the Crone case, the purchase mortgagor was current with his payments until a windstorm damaged the mortgaged property. He was the beneficiary under an insurance policy with loss payable clause in favor of appellee. The insurance check covering the loss was made payable to both parties and neither would endorse the check so the other could cash

it. The mortgagor repaired the damage to the property and in doing so he missed two mortgage payments. The mortgagee undertook to accelerate the maturity of the other payments and sued for the full amount of the indebtedness and for foreclosure. The chancellor in that case allowed the acceleration and ordered the insurance money applied on the debt. This court found that both parties were at fault and reversed with directions to apply the money on the delinquent payments and then on repairs.

In the case of *Johnson* v. *Guaranty Bank & Trust Co.*, 177 Ark. 770, 9 S. W. 2d 3, this court said:

"The stipulation for accelerating the time of payment of the whole debt may be waived by the mortgagee, especially when it is made to depend upon his option. A court of equity will also relieve against the effect of such provision, where the default of the debtor is the result of accident or mistake, or when it is procured by the fraud or other inequitable conduct of the creditor himself.

"Under our decisions, the stipulation in a mortgage for the whole debt to mature upon default of a part of the debt is not treated as a forfeiture clause, *but rather as a stipulation for a period of credit on condition.* A breach of the clause can only be relieved against when some one of the equitable grounds above stated are established. It was not shown that the failure of the mortgagors to make the payments as stipulated in the mortgage was attributable to the plaintiff or its officers. No excuse was offered for the nonpayment of the levee taxes except that the defendants were short of money, and this [is] not sufficient. It is claimed that the failure to pay the purchase money note and the accrued interest on January 1, 1927, was due to the fault of the mortgagee, and an effort was made to place the blame upon its officers who represented it in the transaction, but in this the chancery court

was justified in finding that the defendants have failed.

\* \* \*

"It was the duty of the defendants to pay the installments as they fell due, and they could not rely on any confusion that resulted from a misunderstanding on their part, which was not the result of any inequitable conduct of the plaintiff or its officers, and which was not caused by any misrepresentations made by them. The chancery court made an express finding that plaintiff did no act amounting to a waiver by it of its rights under the acceleration clause, and, under our familiar rules of practice, the finding of facts by a chancellor must be upheld upon appeal, unless clearly against the preponderance of the evidence. Such is not the case here." (emphasis supplied).

The chancellor, in the case before us, obviously found that appellant did no act amounting to a waiver by it of its rights under the acceleration clause in this case. Had the chancellor found otherwise, no decree would have been entered against the Prims for money judgment and for foreclosure. Certainly the chancellor's finding in this regard is not against the preponderance of the evidence, and the correctness of the decree was not challenged.

The chancellor's finding that the payments were in default is also sustained by the evidence and the decree was not challenged on this point. The judgment against the Prims and the foreclosure of the mortgage decreed by the chancellor was inconsistent with the denial of personal judgment against appellees.

Appellees stated in their motion, supra, that they had "no monetary interest in the outcome of a forced sale of said property," unless appellant should be successful on appeal. That proposition, as well as most of

the other contentions of appellees, was settled in the cose of *McCown* v. *Nicks*, 171 Ark. 260, 284 S. W. 739, where this court dealt with a very similar situation as the one we have here, except the mortgage debtors are reversed.

In the McCown case, a trustee sold a tract of land to one Willis for $11,400.00 evidenced by promissory notes secured by vendor's lien retained in the deed. Nicks purchased the land from Willis and assumed the payment of the purchase money notes. Nicks failed to pay one of the notes and on January 12, 1921, reconveyed the land to Willis, who reassumed the payment of the unpaid purchase money notes executed by him for the purchase of the land.

On June 2, 1922, action was commenced against Nicks and Willis for judgment on the notes and to foreclose the lien. Nicks denied personal liability on the notes and ordered the property sold under the lien but the trial court decreed the balance due on the note and ordered the property sold under the lien but dismissed the complaint against Nicks for want of equity. The property was sold at foreclosure where it was purchased by appellant for much less than the balance due on the notes, and the appeal was from that portion of the decree dismissing the complaint as to Nicks.

In reversing the trial court, this court said:

"So long as Nicks' personal liability was thus undetermined, it is not correct to say that he had no interest in the property pledged to secure the purchase money notes, and that it was wholly immaterial to him whether the land under decree was sold for enough to satisfy the judgment. So long as the issue was unsettled as to his personal liability, Nicks was bound to know that it was to his interest to have the property at the foreclosure sale sell for enough, if possible, to liquidate the amount of the decree.

*      *      *

"There is no inconsistency whatever in appellant's

accepting the proceeds of the sale of the property under the decree as a payment on such judgment, and then seeking by their appeal to have appellee held personally liable for the balance due on such decree. To be sure the appellants would only be entitled to one satisfaction of their judgment, but, since the proceeds of the foreclosure sale did not pay the amount of the judgment, if the appellee be personally liable therefor, the appellants had the right to appeal from the judgment of the trial court holding to the contrary.

\* \* \*

"A plaintiff in a foreclosure suit does not, by causing a sale under the decree of foreclosure before taking an appeal, thereby waive his right to appeal from that part of the decree fixing personal liability for a deficiency of proceeds of such sale."

We are of the opinion that the chancellor erred in dismissing the complaint as to the Woolseys. The decree of the chancellor will be reversed as to Woolseys and this cause remanded with directions to render a decree against them also.

Reversed and remanded.