Cite as 2023 Ark. App. 326

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-20-508

| | |
|---|---|
| WILMINGTON SAVINGS FUND SOCIETY D/B/A CHRISTIANA TRUST, TRUSTEE FOR BCAT 2015-4-BTT<br><br>APPELLANT<br><br>V.<br><br><br>MILTON A. SMITH AND L&M&M CORPORATION<br><br>APPELLEES | Opinion Delivered MAY 31, 2023<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, THIRD DIVISION<br>[NO. 60CV-16-1605]<br><br><br>HONORABLE CATHLEEN V. COMPTON, JUDGE<br><br>REVERSED AND REMANDED |

## ROBERT J. GLADWIN

The appellant, Wilmington Savings Fund Society FSB d/b/a Christiana Trust, as trustee for BCAT 2015-4-BTT ("Wilmington") appeals the Pulaski County Circuit Court's judgment in favor of appellees Milton A. Smith and L&M&M Corporation. The circuit court ruled that Wilmington's efforts to foreclose on a note and mortgage that Smith executed in 2007 was barred by the five-year statute of limitations applying to "actions to enforce written obligations, duties, or rights[.]" *See* Ark. Code Ann. § 16-56-111(a) (Repl. 2005). Wilmington now challenges the circuit court's judgment, as well as its post-judgment order denying reconsideration. We reverse and remand.

## I. *Factual Background*

On September 14, 2007, Shirley Thomas conveyed the subject property, 9502 Timber Valley Road in Little Rock, to Milton Smith. On October 16, 2007, Mr. Smith executed a document entitled "Bank of America Equity Maximizer Agreement and Disclosure Statement," in favor of Bank of America. The principal amount of the promissory note was $100,000. Mr. Smith also contemporaneously executed a mortgage in favor of Bank of America on the property. The note and mortgage were payable in monthly installments and had a maturity date of October 16, 2032. The mortgage also provided, however, that in the event of a default, the lender had the option to declare the entire unpaid balance of the debt, including any interest, to be immediately due and payable.

Mr. Smith stopped paying on the note in December 2009, and on May 4, 2010, attorneys for Bank of America sent a "Notice of Default and Intention to Sell" to Smith. The notice provided that a "default [had] occurred in the payment of [the] indebtedness, and the same is now therefore wholly due." It also provided that a nonjudicial foreclosure sale had been set for July 8, 2010. That sale was later canceled, however, by a "Notice of Cancellation" that was recorded with the Pulaski County Circuit Clerk on the date of the intended sale.

On July 21, 2010, Milton Smith executed a quitclaim deed transferring the property at 9502 Timber Valley Road to L&M&M Corporation (LMM), where Mr. Smith apparently served as treasurer.

On December 16, 2010, Bank of America recorded another "Notice of Default and Intention to Sell" with respect to the subject property. The notice provided that a foreclosure

sale was scheduled for February 17, 2011. That sale was also canceled by a "Notice of Cancellation" that was recorded with the Pulaski County Circuit Clerk on February 14, 2011.

Bank of America assigned the note and mortgage to Wilmington in October 2015. Shortly thereafter, on February 4, 2016, Wilmington filed another "Notice of Default and Intention to Sell" informing Smith that a foreclosure sale was set for April 5, 2016.[1]

Smith filed a complaint to quiet title on March 15, 2016. The defendants included Wilmington, Bank of America, and "John Does 1-10." In the complaint, Smith alleged that the promissory note was "not an agreement that could be enforced by foreclosure or otherwise" because no payment had been made since 2009. According to the complaint, Arkansas Code Annotated section 16-56-111 provides that "a contract in writing may not be enforced if more than five (5) years have passed without payment, acknowledgement, or any such thing." Therefore, the complaint alleged that "the foreclosure proceeding is apparently on a security interest that no longer exists," and the circuit court should enter a finding that it "is extinguished and that the [pending] sale [is] both temporarily and permanently enjoined." Consequently, the complaint prayed that the circuit court "grant temporary and permanent injunctive relief, that the sale . . . scheduled for April 5, 2016, be cancelled; that [Smith's] rights under the underlying financial contract be declared; that title and interest in

---

[1] These facts are according to the allegations in Smith's complaint and the admissions in Wilmington's answer.

3

the property be quieted in him alone; and that he receives costs, attorney's fees, and all other just and proper relief."

Smith followed the complaint with a motion to "stay the sale and issue a temporary restraining order," which he filed on March 29, 2016. The circuit court granted the motion on March 31, 2016, ordering that "the sale scheduled for April 5th, 2016, is cancelled until the court has had an opportunity to rule on the issues raised by [Smith]."

Wilmington filed a motion to dismiss and alternative answer on August 26, 2016. Wilmington argued, among other things, that Smith's complaint should be dismissed because Wilmington had not been properly served. Alternatively, Wilmington answered by admitting that it had filed a notice of its intention to foreclose on the Timber Valley property and generally denying the other material allegations in the complaint. Wilmington also pleaded "failure to state facts upon which relief can be granted; insufficiency of process and insufficiency of service of process; lack of standing; tolling; laches; set-off; unclean hands; estoppel;" and "any and all applicable defenses under the mortgage, note, and/or under Arkansas law."

Around the same time, Wilmington sent letters informing Smith that the hazard insurance for the property on Timber Valley Road, which he had been required to maintain under the terms of the mortgage, had expired. Ultimately, by letter dated April 8, 2016,

Wilmington notified Smith that it had obtained hazard insurance on his behalf and "the annual premium . . . has been billed to an [escrow] account established for your loan."[2]

A few years later, on June 25, 2019, Wilmington filed a counterclaim against Smith and a third-party complaint against LMM. Wilmington alleged that its mortgage "was filed prior to the filing of the quitclaim deed," and therefore, "any right, title, claim, or interest held by [LMM] by virtue of [the] quitclaim deed should be declared junior, subordinate, and inferior to any right, title, claim, or interest in the subject property held by Wilmington." Wilmington further alleged that it was entitled to foreclose on the Timber Valley Road property because it was "owed the principal sum of $97,992.37" as well as accrued interest and other costs." Also, "the indebtedness due under the note has never been accelerated, but even if it had been[,] the statute of limitations was tolled by affirmative abandonment of acceleration by Wilmington and/or its predecessors' interest." In addition, Wilmington alleged that "even if the loan had been accelerated, the statute of limitations for collection of the mortgage re-started each time Wilmington or its predecessors in interest . . . made insurance payments on the subject property." Therefore, Wilmington requested that it be granted, *inter alia*, "judgment *in personam* against Milton Smith and *in rem* against the subject property for [the outstanding principal, interest, and costs]; that LMM's interest in the property be declared subordinate to Wilmington's interest; a foreclosure of the mortgage, and a sale of the property.

---

[2]According to the record, Wilmington maintained insurance on the property through at least February 2020.

Mr. Smith and LMM responded with a joint motion for summary judgment and dismissal that they filed on July 22, 2019. Mr. Smith moved for summary judgment "as to his complaint against [Wilmington] and [Bank of America]." He further moved for dismissal of Wilmington's counterclaim against him under Ark. R. Civ. P. 12(b)(6). LMM also invoked Rule 12(b)(6) to move for the dismissal of Wilmington's third-party claim against it. According to the joint motion, "the relief sought by Smith and [LMM] is based on the same grounds: the five-year statute of limitations to enforce the subject has run, barring [Bank of America] and Wilmington from enforcing them."
More particularly, Smith and LMM argued that "prior to assigning the note and mortgage to Wilmington, [Bank of America] accelerated the indebtedness of the note so that the entire amount of principal and interest were immediately due and payable." That triggered the five-year statute of limitations in section 16-56-111, they said, because Wilmington's foreclosure cause of action accrued when Bank of America's attorneys "accelerated the entire indebtedness of the note on or about May 4, 2010." Therefore, the five-year statute of limitations ran many years ago in May 2015," and Wilmington "is barred from enforcing the note and mortgage."

Wilmington responded that the motions should be denied because its foreclosure cause of action did not accrue when Bank of America first accelerated the debt in May 2010, or when it accelerated the debt again in December 2010. Citing the supreme court's decision in *Mitchell v. Federal Land Bank*, 206 Ark. 253, 174 S.W.2d 671 (1943), Wilmington argued that "acceleration may be waived or abandoned through the unilateral actions of the

6

mortgagee," and Bank of America waived its accelerations of the debt that occurred in May 2010 and in December 2010 when it filed the notices canceling their respective foreclosure sales. Alternatively, Wilmington relied on *Dunnington v. Taylor*, 198 Ark. 770, 131 S.W.2d 627 (1939), and other cases to argue that even if its time began to run when Bank of America first accelerated the debt in May 2010, the insurance payments that Wilmington made on the Timber Valley property either tolled the statute of limitations or, as each payment was made, provided "a new date from which limitations would run, just as a payment on the mortgage indebtedness by the mortgagor would."

Smith and LMM came back with an interesting reply. According to them, *Mitchell* and *Dunnington* no longer served as binding precedent because they were legislatively overruled by a 1989 amendment to section 16-56-111. The statute of limitation in effect when the supreme court decided those cases, Pope Digest section 8933, simply provided that "actions on promissory notes, and other instruments in writing, not under seal, shall be commenced within five years after the cause of action shall accrue, and not afterward." Therefore, according to Smith and LMM, "the exceptions to the statute were apparently all judicially created."

Smith and LMM continued that the statute of limitations was materially changed in 1989 when the General Assembly amended it to include a tolling provision that "codified a part of one of the judicially created exceptions to the statute, but not the rest of them." They pointed out that after the 1989 amendment, section 16-56-111(a) provided as follows:

Actions on promissory notes and on other instruments in writing not under seal shall be commenced within five (5) years after the cause of action shall accrue, and not thereafter. The cause of action shall be deemed to have accrued at the time when the creditor first has the legal right to demand payment in full of the entire unpaid principal of the instrument. *However, partial payment or written acknowledgment of default shall toll this statute of limitation.*

Act 664 of 1989, § 1. The act further provided that "all laws and parts of laws in conflict with this Act are hereby repealed," *Id.* § 3, and Smith and LMM asserted that the repealer clause, as well as the incongruity between the new tolling provision and the tolling recognized in *Mitchell* and *Dunnington*, meant that those cases are no longer binding precedent. In their words,

> The General Assembly is presumed to have known the manner in which the Supreme Court had construed this statute, including the judicially created exceptions and tolling theories. The General Assembly expressly repealed all laws in conflict with the amendment and codified in part an exception created by case law: "partial payment or written acknowledgment of default shall toll this statute of limitations." No other judicially created exception or tolling theory was codified. That means that all prior judicially created exceptions and tolling theories [including those from *Mitchell* and *Dunnington*] were repealed.

Wilmington responded by filing a cross-motion for summary judgment on October 16, 2019. As it argued in its responses to Smith and LMM's motions, Wilmington maintained that *Mitchell* and *Dunnington* supported its argument that the statute of limitations had not yet run on its action for foreclosure. It also responded that Act 644 did not repeal the holdings of those cases because there was no "unmistakable language" indicating a legislative intent to overrule them.

The circuit court held a hearing on all the foregoing motions on or about November 25, 2019, whereupon it requested posthearing briefs on Wilmington's motion to dismiss

Smith's complaint based on lack of standing and proof of proper service. Regarding service of process, Wilmington asserted that the affidavit of service and summons were both fatally defective. First, the affidavit was deficient because it failed to identify "which of the party defendants was served with [Smith's] summons and complaint." Further, Smith could "not prove that the affidavit acted as any sort of proof that *Wilmington* was served . . . when Wilmington does not (and has never) maintained a physical office in the state of Arkansas, and therefore, the individual allegedly served, Donna Austin, could not have been authorized to accept service on behalf of Wilmington." There was also no evidence that Ms. Austin "had any affiliation with Wilmington whatsoever." (Emphasis in original.) The affidavit was also deficient, Wilmington said, because it "fails to contain a notary seal" and therefore, was not a "sworn statement" as Rule 4 requires. As for the summons, Wilmington asserted that it was defective because it failed to "identify the proper name for Wilmington."

Wilmington's posthearing brief also urged dismissal of Smith's complaint because he lacked standing to bring a quiet-title action in the first place. Citing cases ruling that "[a] party has no standing to raise an issue regarding property in which he or she has no interest," Wilmington reminded the court that Smith transferred his interest in the property to LMM via quitclaim deed in July 2010. Wilmington argued that dismissal of Smith's complaint was therefore warranted under Ark. R. Civ. P. 17 because Smith "has no interest in the subject property, he is not a real party in interest, [and] he cannot state a claim to quiet title."

Smith and LMM responded by arguing that Wilmington waived its lack-of-proper-service claims because its counterclaim and third-party complaint acknowledged that the

circuit court had "jurisdiction of the subject matter and of the parties to [the] action." They further asserted that Wilmington's counterclaim and third-party complaint were themselves requests for affirmative relief that also operated to waive Wilmington's claim that the circuit court lacked personal jurisdiction over it.

The circuit court ruled on the motions for summary judgment and the motions to dismiss in an order entered on February 21, 2020. In that order, the circuit court denied Wilmington's motion to dismiss based on insufficient service of process, finding that it "admitted in [its] pleadings that this court has jurisdiction of the parties and the subject matter," and, in any event, "service was proper on both parties." The circuit court also found that "the five-year statute of limitations for [Wilmington] to foreclose on the subject property has run." Accordingly, the circuit court ruled that Smith's "motion for summary judgment and motion for dismissal of counterclaim (with prejudice) are granted; and [LMM's] motion for dismissal of third-party complaint with prejudice is granted." Further, the circuit court ruled that "[t]itle to the subject property is quieted in the name of [Smith's] grantee, [LMM]."

On March 6, 2020, Wilmington filed a motion for a new trial and a request to modify the judgment to include findings of fact and conclusions of law. In its motion, it urged the circuit court to reconsider its ruling that Wilmington's foreclosure action was barred by the statute of limitations, arguing that it was contrary to the supreme court's decisions in *Mitchell* and *Dunnington*.

Wilmington also urged the court to reconsider its order granting relief to Smith and LMM because the statute of limitations was "a personal defense [belonging to Smith] and

10

Smith is not a proper party in interest." According to Wilmington, LMM had no right to "assert the defense of limitations, as that defense in Arkansas law belongs solely to the person aggrieved and cannot be assigned." Moreover, "while Smith is a party to this suit, he may not assert the limitations defense because . . . he no longer has an ownership interest in the property and thus has no standing to challenge [Wilmington's] right to foreclose."

The circuit court denied Wilmington's motion for a new trial in an order entered on April 6, 2020. The court explained that it denied the motion because "the five-year statute of limitations has run," and "the 1989 amendment controls." The circuit court also ruled that "the standing argument raised by Wilmington was not raised previously and is denied," and in any event, "Smith did have standing." As for Wilmington's motion to dismiss based on lack of proper service, the circuit court denied reconsideration because "Wilmington, in its own pleadings, admitted that this Court has both personal and subject-matter jurisdiction."

## II. *Standard of Review*

When a party appeals a grant of summary judgment, this court ordinarily examines the record to determine if genuine issues of material fact exist. *See First Nat'l Bank of Izard Cty. v. Old Republic Title Ins. Co.*, 2022 Ark. App. 440, at 7, 655 S.W.3d 108, 112. That is because summary judgment may be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Id.* When the parties file cross-motions for summary judgment, however, the standard of review is different. *Id.* When parties file cross-motions for summary judgment, as they did

11

here, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. *Id.* When the parties agree on the facts, this court simply determines whether the appellee was entitled to judgment as a matter of law. *Id.* at 7, 655 S.W.3d at 112–13. Finally, "[i]n deciding issues of law, [the] standard of review is de novo." *Id.* "De novo review means that the entire case is open for review" *id.*, and the circuit court's conclusions of law are not given any deference. *See Houston v. Houston*, 67 Ark. App. 286, 287, 999 S.W.2d 204, 205 (1999).

III. *Discussion*

A. Personal Jurisdiction

Wilmington first argues that the circuit court erred by denying its motion to dismiss because proof of proper service was lacking. It points out that the only summons in the record was issued to Bank of America, and the affidavit of service "failed to identify the party who was allegedly served with the complaint and summons issued and failed to include the required notarization." Wilmington also argues that it "presented evidence to establish that the affidavit . . . could not have proved service upon [Wilmington] because it was purportedly served in Arkansas, where [Wilmington] does not maintain any offices." Wilmington further argues that proof of proper service was lacking because the summons was purportedly "served on an individual who was not employed or authorized to accept service on behalf of [Wilmington]." We hold that the circuit court did not err when it determined that Wilmington waived these objections to the court's personal jurisdiction.

12

Service of valid process is necessary to give a court jurisdiction over a defendant. *See Johnson v. Schumacher Grp. of Ark., Inc.*, 2019 Ark. App. 545, at 11, 589 S.W.3d 470, 477. "The defense of personal jurisdiction, however, may be waived by the appearance of the defendant without raising an objection." *Id.* (internal quotation marks omitted). "This court has long recognized that any action on the part of a defendant, except to object to jurisdiction, which recognizes the case in court, will amount to an appearance." *Id.* "In determining whether a defendant has waived his rights and entered an appearance, a determining factor is whether the defendant seeks affirmative relief." *Id.* That is, the pleading that is filed must "be more than a defensive action." *Farm Bureau Mut. Ins. Co. v. Campbell*, 315 Ark. 136, 141, 865 S.W.2d 643, 645–46 (1993). "The most obvious examples are counterclaims, crossclaims, and third-party claims in which a defendant invokes the jurisdiction of the court and thereby submits to it." *Cogburn v. Marsh*, 2023 Ark. App. 114, 663 S.W.3d 404.

To be sure, Wilmington raised its objections concerning lack of proper service in the motion to dismiss and alternative answer that it filed in response to Smith's complaint to quiet title. Nevertheless, it later sought affirmative relief in the form of a counterclaim against Smith and a third-party complaint against LMM. Therefore, according to the cases set forth above, Wilmington waived its objections to personal jurisdiction.

## B. Standing

Wilmington also asserts that the circuit court erred by applying the statute of limitations because Smith and LMM both lacked standing to challenge the foreclosure on

13

that basis. Smith, it says, lost standing to challenge the foreclosure on any ground when he transferred his interest in the subject property to LMM in July 2010. Wilmington further contends that the statute of limitations, which Smith first raised in his complaint to quiet title, was a defense that was personal to him and, as such, could not be later invoked by LMM, a third party to the note and mortgage. Because Wilmington failed to timely raise both arguments in the circuit court, we reject them as procedurally barred.

A party generally must object at the first opportunity to preserve an issue for appeal. *See In re Estate of Smith*, 2020 Ark. App. 113, at 18, 597 S.W.3d 65, 76. An argument that is made for the first time in a motion for new trial, moreover, is not timely. *Quarles v. Courtyard Gardens Health & Rehab., LLC*, 2016 Ark. 112, at 11, 488 S.W.3d 513, 521.

In the alternative answer that it filed below, Wilmington generally pleaded "lack of standing," as a defense to Smith's complaint to quiet title. It raised standing again in its posthearing brief where it challenged Smith's standing to have title quieted in his name because he had previously transferred his interest in the property to LMM via quitclaim deed in July 2010. Wilmington did not specifically challenge Smith's or LMM's standing to raise the statute of limitations as a defense, however, until it filed its new-trial motion. Accordingly, we reject Wilmington's challenges to Smith's and LMM's standing because they are not preserved for appellate review.[3]

---

[3]Wilmington's arguments also lack substantive merit in any event. The property interest that LMM acquired via the quitclaim deed gives it standing to challenge the foreclosure based on the statute of limitations. *See Jimerson v. Reed*, 202 Ark. 490, 493, 150 S.W.2d 747, 748 (1941). Smith also has standing to raise the limitations defense because he

## C. *Mitchell* and *Dunnington*

Wilmington further contends that it should prevail even if it waived its challenge to personal jurisdiction and the appellees had standing to raise the statute of limitations. In a nutshell, Wilmington argues that *Mitchell* and *Dunnington* each establish that the statute of limitations had not run in this case, and the circuit court erred when it concluded that they were no longer binding precedent after the General Assembly amended section 16-56-111 in 1989. Because we agree that *Mitchell* and *Dunnington* remain good law after the 1989 amendment, and *Mitchell* directs that Wilmington's claim for foreclosure did not accrue until it accelerated the debt in 2016, we reverse and remand.

A detailed discussion of *Mitchell* and *Dunnington* provides context to the statutory-interpretation issue. The events in *Mitchell* began when two men, Rufus Smith and Hoyt Smith, separately purchased two tracts of land in Logan County in 1927. Rufus and Hoyt each executed notes with appellee Federal Land Bank of St. Louis ("the Bank"). Both notes were secured with mortgages on the land and provided "that failure to make any payment due would mature the entire obligation at the option of the payee." *Mitchell*, 206 Ark. at 253, 174 S.W.2d at 673. The notes became delinquent in 1931, whereupon the Bank exercised its option to accelerate the entire indebtedness and filed two suits for foreclosure. *Id*. The

---

remains the mortgagor on the subject property and therefore remains liable for any balance due on the debt once it is sold. *See Pulaski Fed. Sav. & Loan Ass'n v. Woolsey*, 242 Ark. 612, 615, 414 S.W.2d 633, 635 (1967); *see also State Farm Fire & Cas. Co. v. Andrews*, 363 Ark. 67, 72, 210 S.W.3d 896, 900 (2005) (recognizing that "a party to the mortgage" and "a person having an interest in the property" have standing to challenge a foreclosure).

following year, First National Bank of Paris ("First National"), obtained judgment liens on both tracts of land. *Id.* First National eventually assigned its judgments to appellants Mitchell and Shaw, who did not become parties to the foreclosure suits. *Id.*

The circuit court entered orders dismissing the foreclosure suits without prejudice approximately seven years after they were filed, on February 21, 1938. *Id.* The dismissal order provided as follows:

> And it appearing to the court that [Rufus and Hoyt] consent and agree to the dismissal of said suit and further agree that the dismissal of same shall in no way affect the mortgage and note sued upon . . . or impair the rights of [the Bank] and that they unpaid portion of the mortgage indebtedness and the priority of [the Bank's] lien securing its payment shall be and remain in full force and effect as though the suit had never been filed.

> It is, therefore, considered, ordered, and decreed that said cause be and same is hereby dismissed without prejudice[.]

> It is further ordered and decreed that the dismissal of said suit shall in no way affect the validity of the mortgage and note sued upon or impair the rights of [the Bank] . . . and that same shall be and remain in full force and effect as through no suit had been filed.

*Id.* at 673–74.

Almost two years later, on December 21, 1939, the Bank again filed foreclosure suits on the 1927 notes and mortgages. *Id.* at 674. In each suit, the Bank alleged delinquencies occurred in 1939 and exercised its option to accelerate the entire indebtedness and mortgage. *Id.* Mitchell and Shaw were made defendants to the second foreclosure suits, and they argued (1) that their judgment liens were superior to the Bank's mortgage liens; and (2) that the Bank had waived its right to accelerate the indebtedness and mortgages when it abandoned

16

the accelerations it made in 1931. *Id.* The circuit court disagreed, and Mitchell and Shaw appealed.

On appeal, Mitchell and Shaw argued that the second foreclosure action was barred by the five-year statute of limitations. Among other things, they argued "that when [the Bank] exercised its option to accelerate the mortgages in 1931, such acceleration matured the indebtedness and mortgages for all purposes, and limitations commenced at that time." *Id.* at 676. The supreme court rejected the appellants' argument, holding that in the absence of prejudice to another party, the maturity of the indebtedness that occurred upon the exercise of the optional acceleration clauses in 1931 was extinguished when the Bank waived the accelerations in 1938.

In particular, the court observed that its prior cases established that "when the acceleration clause is of an optional type, then the creditor has the privilege of declaring the acceleration and likewise waiving the acceleration." *Id.* Indeed, "the right to accelerate the indebtedness is exercised by the unilateral act of the creditor; and likewise, the right to waive the acceleration may be exercised by the unilateral act of the creditor, in the absence of any claim or showing that the debtor has changed position because of the acceleration." *Id.* at 676–77. Because the Bank waived its acceleration, and there was "no allegation or showing that any of the parties changed position by reason of the acceleration being declared in 1931," the mortgages were "*reinstated for all purposes*, and with all provisions in full force and effect[.]" *Id.* at 677 (emphasis added). It "necessarily followed," therefore, "that the

17

mortgagee would have the right on subsequent default to avail itself [again] of the right of acceleration." *Id.*

In *Dunnington*, the appellants executed a note and deed of trust in favor of appellee Taylor on April 20, 1929. *See Dunnington*, 198 Ark. at 770, 131 S.W.2d at 627. The note was due and payable one year later. Taylor did not file his suit for foreclosure until June 4, 1938 (eight years later), whereupon the Dunningtons argued that the action was barred by the five-year statute of limitations. *Id.*

Taylor responded that the statute of limitations was tolled when the promissory note was indorsed with a credit of $8.50 on April 1, 1935. *Id.* According to Taylor, the credit "was indorsed on the record in the courthouse on the same date," and the Dunningtons, by their acts and conduct, "acknowledged the debt and thereby tolled the statute of limitations." *Id.* The circuit court entered a decree in Taylor's favor, and the Dunningtons appealed.

The supreme court affirmed, agreeing that the Dunningtons' acknowledgment of the debt waived the statute of limitations. *Id.* at 771, 131 S.W.2d at 628. The supreme court went on to say, however, that the circuit court's rejection of the Dunningtons' limitations defense "should be affirmed on an additional ground." That is, that Taylor's payment of fire insurance premiums . . . under the terms of the deed of trust in question tolled the statute of limitations." *Id.*

Specifically, the court noted that provisions in the deed of trust required the Dunningtons to pay the cost of insurance on the property, and provided that in the event they failed to do so, "Taylor might himself keep the property insured." *Id.* at 773, 131 S.W.2s

18

at 628. The deed of trust further provided that any payments that Taylor made for insurance "were advances for the benefit of [the Dunningtons], in effect made at [their] request," and for that reason "should be added to and become part of the principal debt 'from the date of such expenditures.'" *Id.* The court held that under these provisions, the payments that Taylor made to maintain fire insurance on the property "were added to and made a part of the original debt," and thereby, tolled the statute of limitations. *Id.* at 774, 131 S.W. 2d at 629.

The supreme court elaborated on the rationale for its holding in *Dalton v. Polster*, 200 Ark. 168, 138 S.W.2d 64 (1940). There, the terms of the mortgage provided that Polster (the mortgagee), would pay the taxes on the property in the event that Dalton (the mortgagor), failed to do so, and "all money so expended . . . shall, without notice or demand, be and become from the date of payment, a debt collectible at law, immediately due from [Dalton to Polster] and shall be secured by this mortgage as fully and with like effect as the . . . [note]." *Id.* at 170, 138 S.W.2d at 64-65. The record demonstrated that Polster paid the taxes on the property within the limitation period, and the supreme court applied *Dunnington* to hold that a foreclosure action was not barred by the statute of limitations. In doing so, the court explained its rationale in the following helpful manner:

> Appellees having paid the taxes, the law will imply a request from appellants to do so, which constitutes an advancement to them under the mortgage and contemplated by it when executed. But for the payments of taxes or redemptions from tax sales or both, by appellee, appellants would have lost their land, presumably, and appellee his security. Under such circumstances, *it would be manifestly unjust and inequitable to permit appellants to take advantage of their own wrong by pleading limitations against the original debt.*

*Id.*, 138 S.W.2d at 65 (emphasis added); *see also Young v. Blocker*, 201 Ark. 802, 808, 146 S.W.2d 902, 904 (1941) (applying *Dunnington* to hold that mortgagees "kept the note alive and tolled the statute of limitations" by paying taxes and insurance "up until the date of trial").

Considering the foregoing, we do not believe the legislature intended to overrule *Mitchell*, *Dunnington*, and their related cases when it amended the statute of limitations in 1989. As we have said many times, "the basic rule of statutory construction is to give effect to the intent of the legislature." *Moore v. Moore*, 2016 Ark. 105, at 5, 486 S.W.3d 766, 771. When construing a statute, this court construes a statute "just as it reads, giving the words their ordinary and usually accepted meaning in common language." *Id.* at 6, 486 S.W.3d at 771. When the language of a statute is plain and unambiguous, the court determines legislative intent "from the meaning of the language used," and it will not otherwise "search for legislative intent." *Id.* "Rather, that intent must be gathered from the plain meaning of the language used." *Id.* We will not engage, moreover, in statutory interpretations that defy common sense and produce absurd results. *See Clark v. Johnson Reg'l Med. Ctr.*, 2010 Ark. 115, at 8, 362 S.W.3d 311, 316.

In addition, "any interpretation of a statute by [the supreme court] subsequently becomes a part of the statute itself." *McCutchen v. City of Fort Smith*, 2012 Ark. 452, at 19, 425 S.W.3d 671, 683. The General Assembly is also "presumed to be familiar with the appellate courts' interpretation of its statutes, and if it disagrees with those interpretations, it can amend the statutes." *Id.* The legislature must use unmistakable language, however, to

indicate its intent "to require [a] court to pass again on a subject." *Martin v. Pierce*, 370 Ark. 53, 63, 257 S.W.3d 82, 90 (2007). "Without such amendments, the appellate courts' interpretations of the statute remain the law." *McCutchen*, 2012 Ark. 452, at 19, 425 S.W.3d at 683.

For years, the statute of limitations provided that "actions on promissory notes, and other instruments in writing, not under seal, shall be commenced within five years after the cause of action shall accrue, and not afterward." *E.g.*, Pope's Digest § 8933. As indicated above, the General Assembly amended the statute in 1989 to also say that "[t]he cause of action shall be deemed to have accrued at the time when the creditor first has the legal right to demand payment in full of the entire unpaid principal of the instrument,"[4] but that "partial payment or written acknowledgment of default shall toll this statute of limitation." Act 664 of 1989, § 1.

There is no indication that the General Assembly, by adding the foregoing tolling provision, intended to overrule *Mitchell*, *Dunnington*, and all other judicially recognized tolling principles. Tolling based on fraudulent concealment, for example, is still available even after the 1989 amendment, *see generally Beckworth v. Diamante, a Private Membership Golf Club, LLC*, 2010 Ark. App. 814, at 11, 379 S.W.3d 753, 760, and we recently recognized the continued viability of *Mitchell* in *Ocwen Loan Servicing, LLC v. Oden*, 2020 Ark. App. 384, 609 S.W.3d 410.

---

[4]This sentence was removed from the statute in 1991. *See* Act 1048 of 1991, § 1.

21

There is also no unmistakable language suggesting that the General Assembly intended to allow "the manifestly unjust and inequitable result" avoided by *Dunnington* and its related cases, or that it intended to abrogate the waiver principles discussed in *Mitchell.* Indeed, *Mitchell* does not conflict with the amendment in any way, as it addressed only the point at which a foreclosure claim accrues (at the maturity of the debt) and not when the statute of limitations, once the cause of action has accrued, stops running. Therefore, for these reasons, we hold that the circuit court erred to the extent that it found that the 1989 amendment overruled *Mitchell* and *Dunnington*.

With that said, we think *Mitchell* alone establishes that Wilmington's foreclosure action was not barred by the statute of limitations. Applying *Mitchell* to the undisputed facts here, we agree that the maturities of the debt that occurred when Bank of America exercised its option to accelerate in May and December 2010 were extinguished when the bank waived the accelerations by filing the notices of cancelation on July 8, 2010, and February 17, 2011, respectively. The note did not mature again until Wilmington exercised the option to accelerate in 2016. Accordingly, Wilmington's complaint for foreclosure, which it filed three years later, on June 25, 2019, was not barred by the five-year statute of limitations.

D. Motion for New Trial

In its final argument, Wilmington contends that the circuit court erred when it denied its motion for a new trial and its request to enter additional findings of fact and conclusions of law pursuant to Ark. R. Civ. P. 52(b)(1). A new trial was warranted, it says, because the circuit court's judgment "completely relied on [Smith and LMM's] baseless

22

misinterpretation of the 1989 amendment" as well as their arguments "that the amendment effectively repealed the precedent of *Mitchell* and the companion cases." Wilmington further argues that more findings of fact and conclusions of law were warranted to support the circuit court's reversal of these "long standing and relied upon rule[s] of law."

We decline to reach these issues because we agree that the circuit court erred by applying the statute of limitations to bar Wilmington's claims, and we reverse on that basis. The question whether the circuit court erred by denying the request to modify the judgment, moreover, is not likely to occur on remand.

IV. *Conclusion*

The circuit court did not err when it determined that Wilmington waived its objection to personal jurisdiction. Wilmington's challenges to Smith and LMM's standing to raise the statute of limitations also are not preserved for appellate review. The circuit court erred, however, when it applied the statute of limitations to bar Wilmington's claim for foreclosure.

Reversed and remanded.

KLAPPENBACH AND GRUBER, JJ., agree.

*Mackie Wolf Zientz & Mann, PC*, by: *Emily J. Reynolds*, for appellant.

*Niswanger Law Firm PLC*, by: *Stephen B. Niswanger*, for appellees.